*15 BI*

*Related case*
*1:13-366*

*#3*
*15 BI*
*Fee paid*

AO 241 (Rev. 09/17)

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: *Western District of Pennsylvania* |
|---|---|

| Name (under which you were convicted): *Ricardo Noble* | Docket or Case No.: *1:23-241* |
|---|---|

| Place of Confinement: *S.C.I. Houtzdale P.O. Box 1000 Houtzdale, PA 16698* | Prisoner No.: *BX 9351* |
|---|---|

| Petitioner (include the name under which you were convicted) *Ricardo Noble* | Respondent (authorized person having custody of petitioner) *Laurel Harry, Secretary of PA D.O.C.; Scott KlineFelter, S.C.I. Houtzdale Superintendent* |
|---|---|
| v. | |

| The Attorney General of the State of: *PENNSYLVANIA* |
|---|

**FILED**

### PETITION

AUG 17 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

1. (a) Name and location of court that entered the judgment of conviction you are challenging:
*Erie County Court of Common Pleas*
*140 West 6th Street*
*Erie, PA 16501*

(b) Criminal docket or case number (if you know): *318-1992*

2. (a) Date of the judgment of conviction (if you know): *06/05/1992*

(b) Date of sentencing: *original: 09/29/1992; Resentence: 01/29/2018*

3. Length of sentence: *original: Life without Parole; New sentence: 40 years to Life*

4. In this case, were you convicted on more than one count or of more than one crime? ☑ Yes    ☐ No

5. Identify all crimes of which you were convicted and sentenced in this case:
*• Second Degree Murder*
*• Robbery*
*• Conspiracy to Robbery*

6. (a) What was your plea? (Check one)

☑ (1) Not guilty    ☐ (3) Nolo contendere (no contest)

☐ (2) Guilty    ☐ (4) Insanity plea

Page 2 of 16

AO 241 (Rev. 09/17)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did
you plead guilty to and what did you plead not guilty to?

_____

_____

_____

_____

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury     ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes     ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes     ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:  *Pennsylvania Superior Court*

(b) Docket or case number (if you know):  *1770 ~~1550~~ PGH 1992*

(c) Result:  *denied - 02/03/1994*

(d) Date of result (if you know):  *02/03/1994*

(e) Citation to the case (if you know):  _____

(f) Grounds raised:  _____

_____

_____

_____

_____

_____

(g) Did you seek further review by a higher state court?     ☑ Yes     ☐ No

If yes, answer the following:

(1) Name of court:  *Pennsylvania Supreme Court*

(2) Docket or case number (if you know):  *249 W.D. Alloc. Dkt. 1994*

(3) Result:  *denied*

_____

(page 3, #9 continue)

Grounds raised in PA superior court in 1994:

1. Whether or not trial court erred in refusing to decertify the appellee, Ricardo Noble, in light of the overwhelming evidence in favor of transferring the matter to juvenile court system.

2. Whether or not the court erred in refusing to grant appellee's demurrer on all charges.

3. Whether or not court erred in refusing to sever appellee's trial from co-defendant; Antonio Howard.

4. Whether the trial court committed error when it denied the aspect of appellee's motion in limine seeking exclusion of all evidence of alleged prior bad acts or crimes of appellee.

5. Whether trial court committed error when it summarily denied appellee's motion to change of venue or venire particularly in light of prejudicial errors committed during voire dire.

6. Whether trial court committed error in refusing to allow defense counsel to cross-examine a prosecution witness as to statements she heard concerning the defendants' intentions when the cab was called.

7. Whether trial court committed error in refusing to give jury instructions pertaining to nature and use of confessions and/or admissions of a co-conspirator as they pertain to appellee.

8. Whether or not the court erred at time of sentencing in refusing to make reference to the appellee's possibility of parole or the imposition of minimum sentence for second degree murder conviction.

9. Whether sentencing court properly considered and weighed all relevant sentencing factors when it issued a sentence of 4 to 10 years incarceration concurrent to his sentence of life imprisonment.

AO 241 (Rev. 09/17)

(4) Date of result (if you know): *08/14/1994*

(5) Citation to the case (if you know):

(6) Grounds raised: *(1) Denial of Decertification erroneous, (2) denial of demurrer erroneous, (3) refusal to permit defense counsel to cross-examine prosecution witness regarding defendants' intentions erroneous, and (4) failure to give jury instruction on co-conspirator admission/confession erroneous.*

(h) Did you file a petition for certiorari in the United States Supreme Court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Docket or case number (if you know): _____

(2) Result: *denied*

(3) Date of result (if you know): _____

(4) Citation to the case (if you know): _____

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions concerning this judgment of conviction in any state court?    ☑ Yes    ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court: *Court of Common Pleas of Erie County, PA*

(2) Docket or case number (if you know): *318-1992*

(3) Date of filing (if you know): *01/13/1997*

(4) Nature of the proceeding: *Post-conviction Relief Act (PCRA)*

(5) Grounds raised: *(1) Counsel ineffective when he failed to object to use of Preliminary Hearing transcript at Decertification Hearing, (2) counsel ineffective when failed to motion court to dismiss after numbe of jurors expressed bias opinions on record prior to trial, (3) counsel ineffective when he failed to call defense witness, (4) counsel ineffective for failing to object to testimony elicited at Decertification Hearing, thereby he failed to protect defendant's right against self-incrimination.*

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: *denied*

AO 241 (Rev. 09/17)

(8) Date of result (if you know): _03/18/1897_

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court: _Court of Common Pleas of Erie County, PA_

(2) Docket or case number (if you know): _318-1892_

(3) Date of filing (if you know): _07/25/2012_

(4) Nature of the proceeding: _PCRA_

(5) Grounds raised: _Any sentencing term greater than authorized for third degree Murder at time of alleged offenses violates due process, Ex Post Facto laws, and equal protection, U.S. constitution, Art. 1, Section 10; PA. const. Art. 9, Section 17._

_It violates Pennsylvania and U.S. constitutions and International law to sentence a juvenile to mandatory Life without Parole, U.S. const. Amends. 8 and 14; Pa. const. Art. 1, sec. 13; United Nations convention on child Rights, Article 37._

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: _denied_

(8) Date of result (if you know): _08/22/2013_

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court: _Court of Common Pleas of Erie County, PA_

(2) Docket or case number (if you know): _318-1892_

(3) Date of filing (if you know): _02/26/2016_

(4) Nature of the proceeding: _PCRA_

(5) Grounds raised: _Any sentencing term greater than authorized for third degree Murder at time of alleged offenses violates due process, Ex Post Facto Laws, and Equal Protection, U.S. constitution, Article 1, sec. 10; PA. const. Art. 9, sec. 17. It violates Pennsylvania and U.S. constitutions and International law to sentence a juvenile to mandatory Life without Parole, U.S. const. Amends. 8 and 14; Pa. const. Art. 1, sec. 13; the United Nations convention on child Rights, Article 37._

AO 241 (Rev. 09/17)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes   ☑ No

(7) Result: *GRANTED Resentencing: New sentence given: 40 years to Life*

(8) Date of result (if you know): *GRANTED 07/19/2017; Resentenced: 01/29/2018*

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1) First petition:    ☑ Yes    ☐ No

(2) Second petition:   ☑ Yes    ☐ No

(3) Third petition:    ☑ Yes    ☐ No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

_____

_____

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.**

GROUND ONE:    *See, attached.*

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*See, attached*

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground One, explain why:

_____

_____

_____

_____

_____

_____

## EXHAUSTION OF GROUNDS (ISSUES) IN STATE COURT, Section #12

Direct Appeal OF GROUNDS:

Petitioner appealed from the judgment of Conviction/sentence and raised all Grounds (issues) on direct appeal (Grounds 1-10, 12, 23-33), except Grounds 11, 13-22, because, in Pennsylvania, Grounds (issues) related to Ineffective assistance of counsel can only be raised through a Post-Conviction Relief Act (PCRA) petition in State court.

Grounds 11, 13-33 were raised in PCRA in state trial court in court of common pleas of Erie County, Pennsylvania. The PCRA decision is still pending.

A motion to stay Federal Habeas corpus proceedings of this writ of Habeas corpus has been filed requesting to stay proceedings until all Grounds in PA state court are exhausted. State court remedies are exhausted for Grounds 1-10, 12, 23-33. All other Grounds are pending decision exhaustion in State court.

(i)

In 1992, at age 16, petitioner was sentenced to mandatory Life without Parole for Second Degree Murder, Robbery, and Conspiracy to Robbery charges. In 2012, U.S. Supreme Court ruled that petitioner's sentence was unconstitutional in Miller v. Alabama, 132 S.ct. 2455 (2012), and Miller v. Alabama is retroactive in 2016, in Montgomery v. Louisiana, 136 S.ct. 718 (2016). So, petitioner had to be resentenced. On 01/29/2018, petitioner's life sentence was removed and a new sentence of 40 years to Life was given to petitioner (Com. v. Ricardo Noble, 318-1992) in Erie county court of common Pleas of Pennsylvania. Petitioner appealed to PA Superior Court, Docket Number 420 WDA 2018. Issues (Grounds) raised: See, pages iii-iv of this petition. Remanded, in part, to Erie county court of common Pleas on 04/15/2018. Denied on 01/27/2020, Appealed to PA superior court (Docket Number 204 WDA 2020). Grounds raised: See, page V of this petition. Denied on 07/21/2020. Appealed to PA Supreme court (Docket # 259 WAL 2020). Grounds raised: See, pages Vi-Viii of this petition. Appealed to U.S. Supreme court (Docket # Ricardo Noble V. Pennsylvania, 22-5354). Grounds raised: See, pages ix ~~xiii~~ to Xi of this petition. Denied 10/17/2022.

PA Superior Court (Docket No. 420 WDA 2018) appeal,
GROUNDS RAISED:

1. DID COURT ERR AND ABUSE DISCRETION BY SENTENCING APPELLANT TO EXCESSIVE/BIAS 40 YEARS TO LIFE, IGNORING EX POST FACTO LAWS, SENTENCING APPELLANT BASED ON CONSIDERATION OF FIRST DEGREE MURDER, NOT SECOND DEGREE MURDER, AND AFTER RESENTENCING AN ALLEGED CO-DEFENDANT TO 20 TO 50 YEARS?

2. DID COURT ERR/ABUSE DISCRETION BY DENYING MOTION FOR PSYCHOLOGIST TO DO FULL EVALUATION OF APPELLANT TO MAKE DIAGNOSIS APPOINTED MITIGATION SPECIALIST WASN'T QUALIFIED TO. Thus, IGNORING APPELLANT'S POSSIBLE AND/OR ACTUAL REHABILITATIVE NEEDS?

3. DID COURT ERR/ABUSE DISCRETION AT RESENTENCING HEARING BY PROHIBITING APPELLANT TO ADDRESS/CORRECT FALSE AND MISLEADING DOCUMENTS AND AVERMENTS MADE AGAINST APPELLANT BY APPELLANT'S ATTORNEY AND PROSECUTION IN THEIR SENTENCE MEMORANDUMS?

4. DID COURT ERR/ABUSE DISCRETION BY RELYING ON FALSE, MISLEADING, AND INACCURATE INFORMATION TO DECIDE SENTENCE?

5. DID COURT ERR/ABUSE DISCRETION BY NOT NOTIFYING APPELLANT OF RIGHT AND TIME TO APPEAL SENTENCE?

6. WAS COUNSEL INEFFECTIVE, ERR, AND PREJUDICE APPELLANT BY MALICIOUSLY/FASELY STATING IN SENTENCE MEMORADUM THAT APPELLANT IS GUILTY WITHOUT APPELLANT'S KNOWLEDGE OR CONSENT? APPELLANT ALWAYS STATED (AND EVIDENCE PROVED) HIS INNOCENCE OF ALL CHARGES?

7. WAS COUNSEL INEFFECTIVE, ERR, AND PREJUDICE APPELLANT BY REQUESTING 20 TO 60 YEAR SENTENCE IN SENTENCE MEMORANDUM WITHOUT APPELLANT'S KNOWLEDGE OR CONSENT, THEN AGAINST APPELLANT'S REPEATED OBJECTIONS AT RESENTENCING HEARING?

8. WAS COUNSEL INEFFECTIVE/ERR BY WITHHOLDING DOCUMENTS AND REFUSING TO COMMUNICATE WITH APPELLANT ABOUT CASE?

9. WAS COUNSEL INEFFECTIVE/ERR BY ONLY REVIEWING AND AGREEING WITH PORTIONS OF APPELLANT'S PRISON FILE PROVIDED BY PROSECUTION AND PROSECUTION'S FALSE/MISLEADING INTERPRETATION OF IT?



10. DID EVIDENCE SUPPORT A SENTENCE OR CONVICTION ON FELONY MURDER, ROBBERY, CONSPIRACY TO ROBBERY, AND DECERTIFICATION DENIAL?

11. WAS COUNSEL INEFFECTIVE/ERR BY NOT FILING SENTENCE RECONSIDERATION/MODIFICATION MOTION?

12. DID MITIGATION SPECIALIST ERR AND PREJUDICE APPELLANT BY PROVIDING INCOMPLETE EVALUATION AND REPORT WITH FALSE/MISLEADING INFORMATION AND GIVING UNDERMINING WEAK TESTIMONY?

13. DID COURT REPORTER AND/OR THE COURT ABUSE DISCRETION AND PREJUDICE APPELLANT'S PRESENT AND FUTURE PROCEEDINGS BY PROVIDING INACCURATE RESENTENCE HEARING TRANSCRIPT/TRANSCRIPTION?

(iv)

PA Superior court (Docket No. 204 WDA 2020) appeal,
GROUNDS RAISED:

1. DID THE COURT ERR AND ABUSE DISCRETION BY SENTENCING APPELLANT TO A MANIFESTLY EXCESSIVE, UNREASONABLE, AND BIAS 40 YEARS TO LIFE, RESTITUTION, AND COST OF PROSECUTION, IGNORING EXPOST FACTO LAWS, SENTENCING APPELLANT BASED ON CONSIDERATION OF FIRST DEGREE MURDER, NOT SECOND DEGREE MURDER, AND AFTER RESENTENCING AN ALLEGED CO-DEFENDANT TO 20 TO 50 YEARS?

Suggested Answer: Yes,

2. DID THE COURT ERR AND ABUSE DISCRETION BY IGNORING APPELLANT'S POSSIBLE AND/OR ACTUAL REHABILITATIVE NEEDS INCLUDING, BUT NOT LIMITED TO, MENTAL HEALTH REHABILITATION?
Suggested Answer: Yes.

3. DID THE COURT ERR AND ABUSE DISCRETION BY RELYING ON FALSE, MISLEADING, AND INACCURATE INFORMATION TO DECIDE SENTENCE?
Suggested Answer: Yes,

4. DID COURT ERR AND ABUSE DISCRETION BY NOT REPLACING APPELLANT'S UNETHICAL COURT APPOINTED ATTORNEY (ROBERT BARBATO) WHO WAS BLATANTLY WORKING WITH PROSECUTION AGAINST APPELLANT (HIS OWN CLIENT) AT EVERY STAGE/ISSUE OF CASE TO SABOTAGE CASE?
Suggested Answer: Yes,

V

PA Supreme Court (259WAL2020) appeal,
GROUNDS RAISED:

1. DID COURT ERR AND ABUSE DISCRETION BY
SENTENCING PETITIONER TO A MANIFESTLY
EXCESSIVE, UNREASONABLE, AND BIAS
40 YEARS TO LIFE, RESTITUTION, AND
COST OF PROSECUTION, IGNORING
EX POST Facto LAWS, SENTENCING
PETITIONER BASED ON CONSIDERATION
OF FIRST DEGREE MURDER, NOT SECOND
DEGREE MURDER, AND AFTER
RESENTENCING AN ALLEGED CO-DEFENDANT
TO 20 TO 50 YEARS?

2. DID COURT ERR AND ABUSE DISCRETION
BY IGNORING PETITIONER'S POSSIBLE
AND/OR ACTUAL REHABILITATIVE NEEDS
INCLUDING, BUT NOT LIMITED TO,
MENTAL HEALTH REHABILITATION?

3. DID COURT ERR AND ABUSE DISCRETION
BY RELYING ON FALSE, MISLEADING,
AND INACCURATE INFORMATION TO
DECIDE SENTENCE?

4. DID COURT ERR AND ABUSE DISCRETION BY
NOT REPLACING PETITIONER'S UNETHICAL
COURT APPOINTED ATTORNEY (ROBERT BARBATO)
WHO WAS BLATANTLY WORKING WITH
PROSECUTION AGAINST PETITIONER
(HIS OWN CLIENT) AT EVERY STAGE/ISSUE
OF CASE TO SABOTAGE CASE?

5. DID SUPERIOR COURT ERR/ABUSE DISCRETION BY
IGNORING THE HUNDREDS OF PAGES OF OFFICIAL
DOCUMENTS ATTACHED AS EXHIBITS TO PETITIONER'S
BRIEF THAT VERIFY THAT THE INFORMATION IN
PRE-SENTENCE REPORT, JUVENILE LIFER INFORMATION
PACKET, PROSECUTION'S SENTENCE MEMORANDUM,
DEFENDANT'S SENTENCE MEMORANDUM, AND MITIGATION
REPORT IS FALSE, MISLEADING, AND INACCURATE?

(vi)

6. DID SUPERIOR COURT ERR/ABUSE DISCRETION BY IGNORING THE FACT THAT AT PETITIONER'S 2018 RESENTENCING HEARING THE JUDGE <u>RECANTED</u> THE ONLY REASON HE CLAIMED HE DENIED DECERTIFYING PETITIONER TO JUVENILE SYSTEM IN 1992, THUS MAKING <u>ANY SENTENCE</u> OR CONVICTION ON SAID CHARGES OF PETITIONER IN ADULT CRIMINAL SYSTEM UNCONSTITUTIONAL, ILLEGAL, NULL, AND VOID?

7. DID SUPERIOR COURT ERR/ABUSE DISCRETION BY IGNORING/NOT ADDRESSING ABUSE OF DISCRETION/<u>BIASNESS</u> ISSUE OF RESENTENCING JUDGE CLAIMING IT WAS <u>MANDATORY</u> TO GIVE JUVENILE LIFER PETITIONER A <u>MAX</u> (TAIL) DATE OF <u>LIFE</u> FOR RESENTENCING BUT TWO MONTHS PRIOR, SAME JUDGE GAVE AN ALLEGED CO-DEFENDANT JUVENILE LIFER A <u>MAX</u> (TAIL) DATE OF <u>50 YEARS</u> FOR RESENTENCING?

8. IS PENNSYLVANIA'S LAW TO NOT CONSIDER A DEFENDANT'S ALLEGED INDIVIDUAL LEVEL OF CULPABILITY AND PARTICIPATION IN CRIME CHARGED WITH MULTIPLE DEFENDANTS UNLESS DISTRICT ATTORNEY IS SEEKING LIFE WITHOUT PAROLE SENTENCE UNCONSTITUTIONAL, VIOLATE MILLER v. Alabama?

9. DID COURT ERR/ABUSE DISCRETION BY DENYING MOTION FOR PSYCHOLOGIST TO DO FULL EVALUATION OF PETITIONER TO MAKE DIAGNOSIS APPOINTED MITIGATION SPECIALIST (WILLIAM NILES) WASN'T QUALIFIED TO DO, THUS, IGNORING PETITIONER'S POSSIBLE AND/OR ACTUAL REHABILITATIVE NEEDS?

10. DID COURT ERR/ABUSE DISCRETION AT RESENTENCING HEARING BY PROHIBITING PETITIONER TO <u>ADDRESS/CORRECT</u> FALSE AND MISLEADING DOCUMENTS AND AVERMENTS MADE AGAINST PETITIONER BY PETITIONER'S ATTORNEY AND PROSECUTION IN THEIR SENTENCING MEMORANDUMS?

11. DID MITIGATION SPECIALIST ERR AND PREJUDICE PETITIONER BY PROVIDING INCOMPLETE EVALUATION AND REPORT WITH FALSE/MISLEADING INFORMATION AND GIVING UNDERMINING WEAK TESTIMONY?

12. DID COURT REPORTER AND/OR THE COURT ABUSE DISCRETION AND PREJUDICE PETITIONER'S PRESENT AND FUTURE PREJUDICE PETITIONER'S PROVIDING INACCURATE RESENTENCE HEARING TRANSCRIPT/TRANSCRIPTION?

13. DID EVIDENCE SUPPORT A SENTENCE OR CONVICTION ON FELONY MURDER, ROBBERY, CONSPIRACY TO ROBBERY, AND DECERTIFICATION DENIAL?

Writ of Certiorari to U.S. Supreme Court
(Ricardo Noble V. Pennsylvania, 22-5354) Filed 8/09/2022.
GROUNDS Raised:

PAGE

The Facts, issues, and evidence related to a Juvenile Lifer's Decertification (Transfer) decision are relevant to said Juvenile Lifer's resentencing. The decertification (Transfer) decision presents the sentencing option of a light sentence as a Juvenile and extremely long sentence as an adult. See, Miller v. Alabama, 132 S.ct. 2455 (2012); Alleyne v. U.S., 133 S.ct. 215 (2013); Com. v. Munday, 78 A.3d 661 (Pa. Super. 2013).

1. Does the fact that, at Juvenile Lifer's Resentencing in 2018, the Judge recanted the only reason he claimed he denied Decertifying said Juvenile Lifer petitioner to Juvenile system in 1992 make any sentence and conviction on said charges on adult Criminal system Unconstitutional, null and void? . . . . .    7

2. Did court err/abuse discretion by sentencing petitioner to a manifestly excessive, unreasonable, and bias 40 years to Life, Restitution, and cost of prosecution, ignoring EX Post Facto laws, Sentencing petitioner based on consideration of First degree Murder, Not Second degree murder, and after Resentencing an alleged co-defendant to 20 to 50 years? . . . . . . . . . .    9

3. Did Court err/abuse discretion by relying on False, misleading, and inaccurate information to decide sentence? . .    19

4. Did court err/abuse discretion by not replacing petitioner's unethical court appointed attorney (Robert Barbato) who was blatantly working with prosecution against petitioner (his own client) at every stage/issue of case to sabotage case? . . . . . . . . .    20

5. Did court err/abuse discretion by ignoring petitioner's possible and/or Actual Rehabilitative needs including, but not limited to, mental health rehabilitation? . . . . . . . . .    22

(ix)

6. Did court err/abuse discretion by ignoring the hundreds of pages of official Documents attached as exhibits to petitioner's Brief that verify that the information in pre-sentence report, Juvenile Lifer Information Packet, Prosecution's Sentence Memorandum, Defendant's Sentence memorandum, and mitigation report is false, misleading, and inaccurate?

7. Did court err/abuse discretion by ignoring/not addressing abuse of discretion/<u>biasness</u> issue of Resentencing Judge claiming it was <u>mandatory</u> to give Juvenile Lifer petitioner a <u>max</u> (tail) date of <u>Life</u> for Resentencing, but, two months prior, same Judge gave an alleged co-defendant Juvenile Lifer a <u>max (tail)</u> date of <u>50 years</u> for Resentencing?

8. Is Pennsylvania's law to not consider a defendant's alleged individual level of culpability and participation in crime charged with multiple defendants unless District attorney is seeking Life without Parole sentence unconstitutional?

9. Did court err/abuse discretion by denying motion for Psychologist to do full evaluation of Petitioner to make diagnosis appointed mitigation specialist (William Niles) wasn't qualified to do. Thus, ignoring petitioner's possible and/or actual Rehabilitative needs?

10. Did court err/abuse discretion at Resentencing Hearing by prohibiting petitioner to <u>address/correct</u> false and misleading documents and averments against petitioner by petitioner's attorney and Prosecution in their Sentencing memorandums?

11. Did mitigation specialist err and prejudice petitioner by providing incomplete evaluation and report with false/misleading information and giving undermining weak testimony?

12. Did court reporter and/or the court abuse discretion and prejudice petitioner's present and future court proceedings by providing inaccurate Resentence hearing transcript/transcription?

(X)

13, Did evidence support a sentence or conviction on Felony murder, Robbery, conspiracy to Robbery, And decertification?

14, Did Superior court err/abuse discretion by falsely stating there was conflicting evidence about who actual shooter was, despite fact that prosecution and trial Judge stated No evidence ever existed to establish petitioner as the actual shooter?

15. Is Jones v. Mississippi, 141 S.ct. 1307 (2021), decision to reduce Miller v. Alabama 132 S.ct. 2455 (2012), Juvenile Sentencing consideration requirement to only a discretionary Sentencing procedure where youth is consideration abuse of discretion/unconstitutional?

(Xi)

(section
#12, page 1 -)

## BRIEF CASE HISTORY

I, Ricardo Noble, pro se, petitioner, appellant, am innocent of all charges (Second Degree Murder, Robbery, and Conspiracy to Robbery). On 10/16/1991, at age 15, petitioner came across defendant Antonio Howard ("Howard"), age 15, walking down the street. Petitioner had known Howard since 4th grade but had not seen or heard from him in a few years before 10/16/1991. On 10/17/1991, defendant Howard introduced petitioner to defendant Stephon Johnson ("Johnson"), age 16. On 10/18/1991, the shooting happened. So, petitioner had known defendant Johnson for two DAYS, not two years (as judge shad connelly and court reporter falsely put in 01/29/2018 Resentence Hearing Transcript). Late, the night of the shooting, defendant Johnson went to his cousin Jerome Odom's (an Erie Police Officer) house and told him about the shooting. Then, officer Jerome Odom took defendant Johnson to Erie Police station. Defendant Johnson told Police that he participated in a homicide/Robbery and

(#12, page 2)

Falsely accused petitioner of being actual shooter (Killer).
(Defendant Johnson's 10/19/1991 and 11/15/1991 statements
to police). <u>He was released the same day and Not</u>
<u>arrested or charged for said incident until 10 days</u>
<u>later</u>. Defendant Johnson was first defendant to
turn himself in to police. On 10/19/1991, petitioner
<u>was arrested and charged</u> with said homicide,
Robbery and related charges, didn't implicate
anyone, and placed in adult Erie county jail. on
10/19/1991, Gary cooley (defendant Johnson's uncle)
brought defendant Howard to Erie Police station.
Defendant Howard told police that <u>he participated in</u>
a homicide/Robbery, falsely accused petitioner of
being actual shooter, <u>gave police the gun (alleged</u>
<u>murder weapon)</u>, told police that he stole the gun
from his aunt two weeks before the shooting
and coming in contact with petitioner and that
he (Howard) had the gun immediately before <u>and</u> after
the shooting. 06/04/1992 Trial Transcript (N.T.), p. 92-93),
06/04/1992 N.T., p. 98-99.        <u>But Howard was Not</u>

(#/2, page 3)

arrested or charged for said homicide/Robbery and related charges until 10 days later. Defendant Howard was never charged with possessing or stealing the gun he gave to police. Petitioner was the only defendant charged with possessing the gun Howard gave to police. No Bond was set for petitioner. But,on 02/20/1992, defendant Johnson was released to society after a very low bond of 5,000 dollars (10% of 50,000 dollars) was paid.

Petitioner has always stated that he was not the actual shooter and does not know who was the actual shooter.

## GROUNDS

(Exhaustion of some Grounds are pending in PCRA process in state court. Motion to stay these Federal Habeas Corpus proceedings until Exhaustion Filed.)

1. At Juvenile Lifer petitioner's Resentencing in 2018, Resentencing Judge (Shad Connelly) Recanted the only reason he claimed he denied decertifying petitioner to juvenile system in 1992, therefore any conviction and sentence on said charges in adult criminal system is illegal, unconstitutional, null and void, violating U.S. Constitution Amendments 1, 5, 6, 8, and 14.

SUPPORTING FACTS: At petitioner's May 1992 decertification hearing, all witnesses (defense and

(#/2, page 4)

prosecution) recommended placing petitioner in juvenile system, including same prosecution expert witness (Dr. Tronetti) who recommended that defendant Johnson Not be placed in juvenile system. Prosecution's expert witness recommended that petitioner be placed in juvenile system for two years, then released to society, 05/04/1992 Decertification Hearing Transcript, p. 41-42. But judge Shad connelly placed Johnson in juvenile system and denied petitioner's request. Judge Connelly stated in his 02/08/1993 Memorandum opinion, page 8, that the only reason he denied decertifying petitioner was Connelly's false/unsupported statement that "uncontradicted evidence" proved petitioner was the actual shooter, so petitioner should get a long adult prison sentence. Judge connelly's 02/08/1993 Memorandum opinion, p. 8. Despite Fact that multiple prosecution witnesses stated multiple juvenile system facilities that would accept petitioner, even with a homicide Charge. 05/04/1982 Decertification Transcript, page 128-131, 133   , and prosecution stated that No evidence ever existed to establish petitioner as the actual shooter. Prosecution's Motion To

(#12, page 5)

sentence (08/04/1992 (dated July 28, 1992) p. 3, The only defendant with gun powder residue on their hands was defendant Johnson. 06/02/1992 N.T., p. 63)      and, at trial, defendant Howard testified that he saw defendant Johnson shoot the victim and that he and defendant Johnson conspired to falsely accuse petitioner of being the actual shooter. 06/05/1992 N.T., p. 5 and 29).

But, at petitioner's 01/29/2018 Resentencing, the same judge shad connelly RECANTED the only reason he said he based his decertification denial on and admitted that No evidence ever existed to establish petitioner as the actual shooter. 01/29/2018 Resentence Transcript, p. 30 and 62. which further evidences that any sentence or conviction given to petitioner on said charges in adult court is unconstitutional, illegal, bias, and manifestly excessive and that petitioner is actually innocent of the sentence of 40 years to Life, Cost of prosecution, and Restitution of 1/3 of $6,100 and petitioner's conviction and sentence are abuse of discretion and miscarriage of justice.

(#12, p. 6)

2. The Court abused discretion and violated u.s. constitution Amendments 1, 5, 6, 8, and 14 by sentencing petitioner to a manifestly excessive, unreasonable and bias 40 years to Life, Restitution, and cost of prosecution, ignoring EX Post Facto laws, Sentencing petitioner based on consideration of First degree Murder, Not second degree Murder, and after Resentencing an alleged co-defendant to 20 years to 50 years.

SUPPORTING FACTS:

Petitioner always stated (and the evidence proved) he is innocent of all charges (Second Degree Murder, Robbery, and Conspiracy to Robbery) and only sentence he always requested was immediate release from incarceration. Petitioner's sentence/conviction are a miscarriage of justice. Trial court Judge shad connelly has a history of demonstrating judgment that is manifestly unreasonable, bias, ill-will, partial and prejudice against petitioner. Review of how Judge Connelly handled all of petitioner's and defendants Howard and Johnson's court proceedings (Decertification, etc.) verifies such. Petitioner's court appointed attorney (Robert Barbuto), who represented petitioner for Resentencing, only worked against petitioner with prosecution to Sabotage petitioner's case. On 02/10/2021, Barbato was Sentenced to 18 to 36 months in prison for scamming his clients from 2014 to 2020.

In 1992, at age 16, petitioner was sentenced to mandatory Life without Parole (LWOP) for the above-mentioned charges from 1991. In 2016, u.s. supreme court ruled petitioner's sentence unconstitutional, so, on 01/29/2018, petitioner was given new sentence of 40 years to Life.

(#12, page 2)

Court erred/abused discretion by sentencing appellant to a manifestly excessive/unreasonable and bias 40 years to life, ignoring Ex Post Facto Laws, and sentencing appellant based on considerations of first degree murder, not second degree murder. On 03/22/2018, appellant's court appointed attorney, Robert Barbato ("Barbato"), filed a concise statement of Matters complained of on Appeal ("1925(b)") and, on 04/06/2018, Judge Connelly wrote a Memorandum Opinion to said 1925(b) that they refused to let appellant see until after Barbato was removed, appellant allowed to proceed pro se, and Superior Court ordered that a copy be given to appellant. After appellant was granted permission to proceed pro se, appellant filed an Amended 1925(b), on 08/06/2018 (docketed on 08/08/2018) and Judge had Connelly ("Judge Connelly") did a Memorandum opinion to said Amended 1925(b), on 08/29/2018,

In Judge Connelly's 04/06/2018 Memorandum opinion, he stated: "In the case at bar, the Court relied upon the factors set forth in present statute pertaining to sentencing juveniles convicted of first degree

(#12, page 8)

Murder. 18 Pa.C.S. 1102.1(a)." See, 04/06/2018 Memorandum Opinion, page 1. On page 2 of 04/06/2018 Memorandum Opinion, Judge Connelly stated: "Trial court was required to impose a <u>mandatory</u> maximum sentence of life imprisonment when resentencing a juvenile on <u>first</u> degree Murder." And that the <u>minimum</u> amount of years given to appellant was guided by the <u>first</u>- degree Murder statute. But, two months before appellant's <u>resentence</u>, Judge Connelly sentenced one of appellant's alleged co-defendants, Antonio Howard ("Howard"), to 20 to <u>50 years</u>. Despite fact that appellant and Howard were convicted of <u>second</u> degree Murder. Thus, verify that Judge Connelly knows that a life imprisonment maximum "tail" is Not mandatory and Judge Connelly's continued bias, ill-will, prejudice, partiality against appellant and evidence of excessive 40 years to life Sentence. Erie county clerk of court and Judge Connelly have a history of intentionally falsely listing appellant's conviction as <u>first</u> degree Murder.

Also, Howard's prison behavior record is similar to, if not worse, than petitioner's and Howard's prison classification summary done by his prison counselor states that <u>Howard has a high risk of re-offending violently if paroled</u> (Page 19 of Howard's 11/08/2017 Resentence Transcript). Petitioner's prison classification summary states petitioner <u>is low risk of re-offending</u>. Howard was released on Parole in May 2018.

(#12, page 9)

Petitioner and defendant Howard were tried together, and convicted of Robbery, conspiracy to Robbery, and second Degree Murder on 06/05/1992. On 09/29/1992, petitioner was sentenced to maabatory Life without parole (LWOP) for second Degree Murder, concurrent 4 to 10 years for Robbery and conspiracy to Robbery, and to pay 1/3 of $6,100 restitution for funeral expences and gravemaker.

In 2012, U.S. supreme court ruled that petitioner's LWOP sentence was unconstitutional, see, <u>Miller v. Alabama</u> 132 S.ct. 2455 (2012), and <u>Miller v. Alabama</u> is retroactive, in 2016, in <u>Montgomery v. Louisiana</u>, 136 S.ct. 718 (2016), So, petitioner had to be resentenced on 04/13/2016, attorney Robert Barbato was appointed by the court to represent petitioner. Review of the case docket sheet (<u>Com. v. Ricardo Noble</u>, 318 - 1992) From 09/08/2016 to 06/15/2018 (when petitioner was

( #12, page 10 )

permitted to represent himself ) shows a continuing
pattern of conflict of interests and Barbato's
unethical conduct regarding representing petitioner similar
to actions against his clients that got him sent to
prison on 02/10/2021. On 02/10/2021, attorney Robert
Barbato ("Barbato") was sentenced to 18 to 36 months
in prison for scamming his clients from 2014 to 2020.
During his sentencing, Barbato admitted to being alcoholic and
addicted to cocaine and marijuana.

    02/10/2021 Erie Times News article by
Tim Hahn, "Ex-Erie Lawyer Gets State Prison Term,
hefty restitution in forgery, theft case." (com. v. Robert
M. Barbato, Jr, 1986-2020). Petitioner was resentenced on 01/29/2018.

    Petitioner's court appointed attorney (Robert
Barbato ("Barbato")) made petitioner's Defendant's        to
sentence Memorandum (dated 01/22/2023)
mainly complement (help) the prosecution, not
oppose prosecution's sentence memorandum. Barbato
gave petitioner a copy of Defendant's sentence
memorandum on Thursday (01/25/2018), so petitioner
wouldn't have time to respond to it before his resentencing
on 01/29/2018 (Monday).

    On page 2, 10, and 11 of Defendant's sentence
Memorandum done by attorney Barbato, Barbato
maliciously only states that petitioner maintains

(#12, page 11 )

that he did not Kill or conspire to Kill the victim.
But Barbato maliciously/intentionally never states
that petitioner also always maintained that he did
not rob or conspire to rob the victim. Instead,
on page 4 of Defendant's sentence memorandum,
Barbato falsely states that petitioner shares
guilt ("Culpability") and, on page 8, Barbato
falsely states that petitioner is not looking to be
absolved from any wrong doing, without petitioner's
knowledge or consent. Despite fact that petitioner
always stated (and the evidence proved) he is
innocent of all charges and Barbato stated
in his 05/25/2016 letter to petitioner
            that he read petitioner's book
declaring and proving his innocence, titled
"Erie, Pennsylvania's Betrayal of child" © 2007
by Ricardo Noble (petitioner), that can be
read/downloaded for free at: www. PrisonsFoundation.org.
"Resentencing: Erie, Pennsylvania's Betrayal of
Child, Book Three" © 2018 can also be read/downloaded
for Free at: www. PrisonsFoundation. org. Also, see
            (Petitioner's 01/29/2018
Re-sentencing Transcript), p. 29, 32, and 41. Barbato
conspired with prosecution/judge shad connelly against
petitioner. Thus, Barbato submitted a guilty plea

(#12, page 12)

on petitioner's behalf <u>without</u> petitioner's knowledge or consent because he knew petitioner would <u>not</u> agree to such.

On page 12 of Defendant's Sentence Memorandum, page 1 of Preliminary Mitigation Report and Reentry Plan and Proposed Sentence order, Barbato falsely states that petitioner requests (is willing to accept) a 20 to 60 year sentence (which is <u>10 years more than</u> what judge Shad connelly resentenced alleged co-defendant Howard to in November 2017), without petitioner's knowledge or consent. Petitioner always stated he is innocent of all charges and release from prison immediately is only sentence he is requesting. In Barbato's letter dated <u>09/14/2016</u> and 06/30/<u>2017</u> letter Barbato stated that he would only be requesting a sentence of "Time served."

At the beginning of 01/29/2018 Resentence Hearing <u>and</u> during allocution, petitioner told judge connelly that he did not request or agree to the 20 to 60 year sentence requested by Barbato and Barbato's (his) mitigation specialist (William Niles) and only sentence petitioner is <u>requesting is</u> "time served" immediate release from prison. (01/29/2018 Re-sentence Hearing Transcript), p. 2-4, 43. <u>Then,</u> toward end of

(#/2, page 13)

Said Re-sentence Hearing, Barbato maliciously ~~repeatedly~~
told judge Connelly that petitioner is requesting a
20 to 60 year Sentence. And each time petitioner
objected and stated he is not requesting 20 to 60
years. Then, Barbato told the judge that he wants petitioner
(me) to get 20 to 60 years, even though he knows petitioner
disagrees with him. _____ ( Prejudicing
petitioner and exhibiting conflict of interest ) ineffective
assistance of counsel.

Attorney Barbato Regularly refused to communicate
with petitioner about case, didn't keep petitioner
updated with case, and withheld case documents
and filings in case including, but not limited to
withholding witness statements, trial Transcripts, appeal briefs, etc.
A review of docket Entries in petitioner's case in
Court of common Pleas of Erie county and PA Superior
Court from 05/08/2016 to 2019 shows regular
pattern of petitioner asking Barbato to stop withholding
documents, requesting docket sheets from clerk of
Court to find out what's going on with case and
writing Barbato and Court asking what's going on
in case. 12/29/2017 docket Entry shows petitioner
inquiring about case. _____ (Petitioner's
Motion for Replacement of counsel (dated 12/07/2016,
docketed 12/09/2016),     03/24/2017 (docketed 03/28/2017)
(petitioner's Request for his attorney to stop
Withholding documents)     (01/16/2018 (docketed
01/18/2018) letter to attorney Barbato),

(02/08/2018 (docketed 02/12/2018) Request for
Counsel Replacement),     (03/20/2018 (docketed

(#12, page 14)

03/22/2018) letter to Judge Shad connelly), (04/08/2018
(docketed 04/11/2018) Defendant's Request to
Represent Himself), (04/30/2018(docketed
05/02/2018) Request For Barbato's Harassment to
stop) (05/21/2018 letter to Barbato),
(Barbato's 04/10/2018 Motion to withdraw
as counsel of Record).

At petitioner's Resentence Hearing, judge connelly
told petitioner that he is not allowed at any time
during Resentence Hearing to mention, address, or
correct any false or misleading information about
petitioner in prosecution's and petitioner's court
appointed attorney's(Barbato's) sentence Memoradums
that petitioner received on Thursday (01/25/2018), Four
days before Resentence Hearing on Monday(01/29/2018).
Judge connelly also told petitioner
he is not allowed to say he is innocent.
Despite Fact that petitioner's attorney (Barbato)
Falsely stated in Defendant's sentence Memorandum
that petitioner admits to being guilty, without
petitioner's knowledge or consent.
Judge connelly stated that if petitioner
tries to mention, address or correct any false, negative,
or misleading information about petitioner in
Defendant's OR prosecution's sentence Memorandums,

(#12, page 15)

he will be kicked out of courtroom and Resentence Hearing will be held without petitioner being present. Despite Fact that petitioner was not trying to argue the law and the issues were mainly about petitioner's prison File, a main issue considered at Resentencing.

Some issues that should've been addressed/corrected regarding prosecution's 11/30/2017 Sentence Memoradum involving petitioner's prison file:

Petitioner had been incarcerated for 26 years at time of prosecution's Sentence Memorandum. The memorandum lists petitioner's alleged prison misconduct history beginning on 12/16/2001, on page 5. Petitioner was not "kicked out" of state correctional Institution ("S.C.I.") Pittsburgh or S.C.I.-Camp Hill. Petitioner was transferred from S.C.I.-Pittsburgh to S.C.I.-Camp Hill in october 1992, then to S.C.I.- Rockview because S.C.I.-Camp Hill and S.C.I.- Pittsburgh were only for petitioner's prison classification, they were also prisoner classification prisons.

From 12/16/2001 to date of 01/29/2018 Resentence Hearing petitioner had been placed in solitary confinement, also called "the hole" or Restricted Housing Unit ("RHU"), Four times (12/16/2001 (for misconduct #A128107 at S.C.I.-Huntingdon), 10/29/2003 (for

(#12, page 16)

misconduct #A461766, at S.C.I. Huntingdon), 05/02/2006 (for misconduct #A264759 at S.C.I. Frackville), and S.C.I. Greene, 08/08/2014 (for misconduct #B266541).

(Defendant's Statement; Misconduct #B266541);
(08/18/2004 - Other Report #A67946);
05/25/2006 S.C.I. Coal Township Superintendent's Grievance #151689 Appeal Response); 08/28/2006 Grievance #151689 Final Review Response).

But, prosecution's and Barbato's sentence Memorandums intentionally/maliciously give false impression that petitioner was placed in the hole (RHU) 14 times between 2001 and 2017. See, pages 5 and 6 of prosecution's Sentence Memorandum.

page 5 of prosecution's sentence memorandum states: "October 29, 2003: Assault, Fighting, and refusing to obey an order. He was found guilty and removed from his job for 30 days and ordered to pay for property loss. November 6, 2003: Refusing to obey an order. He is found guilty and placed in Disciplinary custody for 30 days." Actually, when a prisoner is found guilty, gets a misconduct for fighting they are automatically placed in RHU on Disciplinary custody ("DC") status. They don't only lose their job.

Actually the 10/29/2003 misconduct (#A461766) is

(#12, page 17)

When petitioner was charged with assault (with a weapon) on petitioner's cellmate (person petitioner was housed in cell with) in dining hall at S.C.I.-Huntingdon. See, Joye Williams. v. Beard, 482 F.3d 637 (3d cir. 2007). As a result, petitioner was immediately placed in RHU, given 270 days of Disciplinary Custody in RHU, loss of Job, and criminal charges filed. See, Com. v. Ricardo Noble, 56 CA 2004 (Huntingdon county); (02/26/2013 Initial Case Summary - Initial Classification Summary ("ICS"), (07/27/2016 - PA D.O.C.- Misconducts), p. 3

So, petitioner was already in RHU on Disciplinary Custody status for misconduct #A661766 when petitioner received the November 6, 2003 misconduct #A598332 for refusing to obey an order. The order was to accept a cellmate while already in RHU on Disciplinary custody status. (Misconduct #A598332), (Misconduct #A598332 verdict/sanction).

The misconducts mentioned on pages 5-6 of prosecution's Sentence Memorandum from 11/06/2003 to 05/01/2005 at S.C.I.-Huntingdon were for refusing to obey an order to accept a cellmate (also called, "cellie") while already in the hole (RHU) on Disciplinary Custody status waiting to go to trial in criminal Court in Huntingdon county court house for charges of

(#12, page 18 )

assault (with weapon) on his cellmate (Joye williams) in S.c.i.-Huntingdon Inmate Dining Hall.
(08/06/2003 Misconduct #A598332);
03/15/2005 Misconduct #A686676);
(07/08/2004 Misconduct #A689508);        (08/23/2004 Misconduct #A672632);     [10/05/2004 Misconduct #672569).        (10/13/2004 Misconduct #A673601);
(12/07/2004 Misconduct #A687208);
(12/27/2004 Misconduct #A687288);
(02/01/2005 Misconduct #A697648);                 (05/01/2005 Misconduct #A674348). But prosecution and Barbato, in their sentence memorandums, intentionally/maliciously give false impression that petitioner was placed in RHu (Disciplinary custody) on 11/06/2003 for refusing order to accept a cellmate, let out of RHU, then repeatedly came back and forth to RHu for refusing to accept a cellmate between 11/06/2003 to 05/01/2005. Barbato's and prosecution's sentence memorandums don't state the content of misconducts or orders refused.

The last misconduct (#A674348), received on 05/01/2005, for refusing to accept a cellmate while in RHu was dismissed by Hearing Examiner because S.c.i.-Huntingdon RHu correction officers (C.O.'s) should've never tried to give petitioner a cellmate

(#12, page 19)

While in RHU(Disciplinary custody) for alleged assault (with weapon) on a cellmate and had a Z-code (single cell status), meaning only be in cell with no cellmate, during the time many of those misconducts for refusing to Obey an order to accept a cellmate while in RHU were wrongfully given. Petitioner was given a Z-code as result of 10/29/2003 cellmate altercation and continues to have a Z-code presently.

On page 7 of prosecution's sentence memorandum, it states that petitioner was transferred to S.C.I. Frackville on 05/03/2005 and remained there until transferred to S.C.I.-Coal Township on 05/02/2006 and received no misconducts at S.C.I. Frackville. And remained at S.C.I. Coal Township until June 6, 2006 where petitioner was found guilty of assault and related charges (misconduct #A264759). Then, petitioner was moved back and forth from S.C.I. Coal Township to S.C.I.-Frackville from 06/06/2006 to 02/13/2007. That's false. Actually, petitioner received misconduct #A264759 at S.C.I. Frackville on 05/02/2006, then transferred to S.C.I.-Coal Township the same day as a result of said misconduct. See,

Petitioner Never received a misconduct at S.C.I.-Coal Township. Petitioner was

(#12, page 20)

returned to S.C.I.-Coal Township after he left on 02/13/2007. Petitioner never returned to S.C.I.-Frackville after he left on 05/02/2006. Petitioner was only at S.C.I.-Frackville and S.C.I.-Coal Township one time.

Petitioner was already in RHU when he received false misconduct #A569517 alleging "Lying to Employee" on 10/29/2007. On 02/13/2007, petitioner was transferred from S.C.I.-Coal Township's RHU to S.C.I.-Greene's RHU and kept in S.C.I.-Greene's RHU until 2013. The false and retaliatory "Lying to Employee" misconduct was for filing and refusing to withdraw grievance #203021 about RHU C.O. Fleming's regular sadistic habit of banging, twisting, and squeezing petitioner's hands, arm, and wrists when handcuffing petitioner to be escorted to and from RHU law library and shower. To so-called "investigate," they asked C.O. Fleming did he do it. He said, "No." So, they gave petitioner the false and retaliatory "Lying to Employee" misconduct #A569517, which is a common unconstitutional tactic to scare prisoners into withdrawing or not filing legitimate grievances about wrongs staff commit against them.

The 08/08/2014 misconduct (#B266541) only involved one staff member, not multiple.
                                                                    Petitioner

( #12, page 21 )

was already in RHU on Disciplinary custody status ~~for~~
misconduct #B266541 when he received False/retaliatory
misconduct #B643098 charges (Destroying, Altering, tampering
With) for placing an RHU jumpsuit under cell door
to stop urine/feces toilet water from coming into his
cell because someone flooded the entire bottom tier.
Review of actual misconduct/appeal proves it was
False/retaliatory for misconduct #B266541.

   Page 8 of prosecution's sentence Memorandum
states that on 01/10/2005 petitioner pled guilty to
possession of weapons or implements for Escape.
Actually, petitioner pled guilty to and was specifically
only sentenced for possession of a weapon, which
is/derives from the same weapon incident from the
10/29/2003 cellmate altercation (misconduct #A461766).
                (01/10/2005 Sentence order, com. v.
Ricardo Noble, 56 CA 2004),    (01/10/2005 Sentence,
com. v. Ricardo, 56 CA 2004);       (08/18/2004 other Report #A67946).
But Barbato and prosecution intentionally give False
impression that the 01/10/2005 weapon possession
conviction/sentence and 10/29/2003 cellmate incident
were two different incidents.

   Many of the "Separations" listed on page 8 of

(#12, page 22)

prosecution's sentence memorandum regarding alleged reasons for "separation" are false, vague, questionable, and misleading. None of petitioner's misconducts or alleged "activities" causing transfer to different prison had anything to do with petitioner being a sincere adherent of the Nation of Gods and Earths ("NGE"), commonly called, "The 5%." Petitioner never slashed a c.o. at S.c.I. Frackville. That alleged incident is from the same alleged S.c.I. Frackville 05/02/2006 misconduct #A264759. The actual misconduct does not say the c.o. was "slashed." If a c.o. was slashed, criminal charges would've been filed, petitioner would've had to pay c.o.'s medical bills and the c.o. would have a scar on his face or place of alleged slashing. None of that happened. Actually, misconduct #A264759 falsely states petitioner accidently "hit" a c.o. in the face while the c.o. tried to break up an altercation between petitioner and another prisoner. It does not say "slashed." Actually, the c.o. was never hit or slashed. On page 7 of said memorandum, prosecution states that petitioner received no misconducts while at S.c.I. Frackville. Page 8 also states that petitioner has a separation at S.c.I. Frackview "for activities with the 5% organization." S.c.I. Frackview never existed.

On page 9 of prosecution's sentence memorandum,

(#12, page 23)

prosecution uses gang language to describe the NGE (5%) and gives false impression that the NGE (5%) is a <u>prison</u> gang and/or STG ("Security Threat Group"). But falsely states they are not arguing that the NGE (5%) <u>outside</u> of prison is a gang. Prosecution does not deny that they are claiming the NGE (5%) is a STG. And prosecution submits document from "Juvenile Lifer Information Packet" (compilation of petitioner's prison file compiled by petitioner's S.C.I.- Greene prison counselor specifically/only for petitioner's Resentencing) that <u>falsely</u> states petitioner is a member of a STG. The alleged STG is the NGE (5%). Membership in a gang or STG gives the impression that petitioner, among other negative things, would also likely be a threat to safety and security of community outside of prison. Petitioner was never a gang or STG member. The NGE (5%) was <u>Never</u> designated as a STG or gang in Pennsylvania Department of Corrections (PA.D.O.C.), NGE (5%) is <u>Not</u> a gang, and NGE (5%) is recognized, authorized, <u>and</u> <u>accommodated</u> as a legitimate Religion in/by PA.D.O.C.
09/14/2017 (docketed 09/18/2017) Defendant's statement: Nation of Gods and Earths ("5%"); 
(09/17/2017 (docketed 10/05/2017) Defendant's statement: NGE (5%), Marria V. Broaddus); (10/03/2017 (docketed 10/05/2017) Attachment to Defendant's 09/15/2017 NGE (5%) statement). S.C.I.- Greene prison officials have admitted in writing repeatedly that the STG classification in Juvenile Lifer Info. Packet is false and

(#12, page 24)

NGE(s.o.) was Never designated as a STG in PA.D.O.C. When petitioner inquired and complained about it. And the false STG Classification of petitioner was removed from petitioner's prison file. D.O.C. officials also admitted in writing (sworn testimony) that S.C.I.- Greene staff who gave petitioner the false STG Label did not have basis or authority to give petitioner STG classification.

On page 8 of prosecution's sentence memorandum, prosecution falsely states that petitioner committed acts of violence ("Murder") against the victim ("Richard Stevens") to obtain money. Actually, petitioner did not kill or rob the victim and petitioner did not conspire to kill or rob the victim. Petitioner did not commit any acts of violence against the victim.
(06/01/1982 Trial Transcript Notes of Testimony (N.T.), p. 144;
       (06/02) 1982 N.T., p. 53);

(06/03/1992, N.T., p. 28);
(06/05/1992 N.T., p. 34-35). Petitioner does Not Know who actual shooter was. When police arrived on the scene, the victim still had about 160 dollars in his wallet, 30 dollars in his shirt pocket, and 6 dollars in his pants pocket. The prosecution, jury, and judge Connelly could never state any specific fact or evidence to support their blatantly false allegations of being actual shooter or any other charges against petitioner.

(#12, page 25)

Attached to prosecution's 11/30/2017 sentence Memorandum was a 07/13/2016 "Juvenile Lifer Information Packet" (JLIP) compiled by S.C.I. Greene prison staff, Which is an abridged version or "recitation" of petitioner's 27 year prison File (no actual misconduct copy, education certificates, etc.); and is seemingly origin of <u>some</u> of prosecution's false representations of petitioner's prison File in Prosecution's Sentence memorandum. But is no excuse for prosecution's False representations of petitioner's prison File because prosecution had access to petitioner's actual prison<u>File</u> documents and petitioner submitted certain documents to court and prosecution on his own because petitioner knew that his court appointed attorney (Barbato) would not present any documents to help or defend petitioner. <u>Some other errors in the "Juvenile Lifer Information Packet"</u>:

(A) The 10/20/2015 DC-43 "Integrated Corrections Plan" indicates "Below Average" Housing Report. Petitioner's prison counselor (Mr. Stella) who did said report states in response to 10/29/2015 DC-135A states that he mistakenly put "Below Average" when petitioner's <u>10/20/2015 Housing Report</u> was actually "Average." (Stella's 11/02/2015 response to 10/29/2015 DC-135A). The 09/30/2015 Housing Report Form for the 10/15/2015 Review says, "Average." See, JLIP.

(B) The 02/26/2013 "Integrated Case Summary — Initial Classification Summary ("ICS")" Falsely states petitioner Slashed a C.O.'s Face; was transferred to/from

(#12, page 26)

S.C.I. Frackville and S.C.I. Coal Township repeatedly; erroneously states petitioner was convicted of First degree murder; falsely claimed petitioner only worked (had a job) 5 months out his 27 years of incarceration; falsely claims petitioner was kicked out of a prison named Frackview; falsely states that, as of 2013, most of incarceration was in RHU; only states GED as education received in prison; give petitioner false STG classification; falsely claims petitioner was found guilty of Implements of Escape in 01/10/2005; and gives false impression that the I.Q. test from 1992 was more recent.

Actually, petitioner's documented education while in prison at time of said 02/26/2013 ICS are: (1) GED, (2) Black American History, (3) Desk top Publishing, (4) Psychology, (5) Science, (6) Fundamentals of carpentry, (7) 90 day skills program, (8) Night time computer Applications, and (9) General Business.

(Prosecution received copy of said education certificates with petitioner's pro se 12/03/2018 sentence Appeal Brief to PA superior court (420 WDA 2018).

PA.D.O.C. prison staff began preparing Juvenile Lifer's prison file (Juvenile Lifer Info. Packet) in 2012 for Resentencing So they would be prepared for Favorable decision in Montgomery v. Louisiana. "Juvenile Lifers: From Resentencing to Reentry" by Pa. Board of Probation/Parole

(#12, page 27)

Atty. Barbato made Defendant's sentence memorandum, to mainly complement, not oppose, prosecution's sentence memorandum. Barbato did not request or review petitioner's _entire_ prison file relevant to resentencing. Barbato only reviewed and agreed with the portions of petitioner's prison file provided by prosecution and prosecution's negative, false, and misleading interpretation of it.                All Juvenile Lifers and their attorneys were given DC-108 (Release of Information) forms by coordinating Law organizations. IF Barbato would've requested petitioner's prison file from S.C.I. Greene (where petitioner was located at said time), Barbato would've received petitioner's _actual_ prison file _documents_ (misconduct reports, education certificates, etc.), not the false/misleading "Juvenile Lifer Information packet". Barbato and Barbato's so-called mitigation specialist (William Niles) refused to discuss petitioner's prison file with petitioner OR request petitioner's entire prison file relevant to resentencing from D.O.C. Niles admitted that he didn't request or review petitioner's entire prison file, only reviewed what prosecution gave him/Barbato, and did not do full evaluation of petitioner.

(#12, page 28)

Some other issues in Defendant's sentence Memorandum drafted by attorney Robert Barbato:

Barbato, without petitioner's Knowledge or consent, Falsely states that petitioner shares guilt (p.4) and Falsely states petitioner is not looking to be absolved from any wrong doing (p.8). Despite Fact that petitioner always states (and the evidence proved) he is innocent of all charges; the only defendant with gun powder residue on their hands was Johnson, N.T.,p.63. the only defendant with blood on their clothing was Johnson, the only defendant's fingerprints on items (over 70 items) taken from victim were Howard's and Johnson's, at trial, defendant Howard testified that he and defendant Johnson conspired to Falsely accuse petitioner of being actual shooter and defendant Johnson was the actual shooter, and that petitioner did not conspire to rob or kill the victim. Barbato and Niles refused to mention said mitigating and exonerating Facts.

On page 4, Barbato states that petitioner's record while in prison shows mostly that petitioner has not been able to get along with corrections officers. That statement is not supported by the record and is false, prejudicial, and unethical for an attorney to make against his own client.

On pages 5-6, Barbato misleadingly states

(#12, page 29)

that in 2003 petitioner got into a fight, is removed from job. After the fight, petitioner is requesting to Not have a cellmate, which caused petitioner to be put in the hole ("RHU"). This happened 10 separate times until he is transferred to s.c.i.-Frackville between 2003 and 2005. Actually, the "2003 fight" was the 10/29/2003 incident (misconduct #A461766) when petitioner was charged with assault (with weapon) on his cellmate in s.c.i.-Huntingdon inmate dining hall.                    Petitioner was immediately placed in RHu Disciplinary custody on 10/29/2003 and given 270 days Disciplinary custody, in addition to, loss of job because of said incident. Petitioner was already in hole (RHu) on Disciplinary custody for Misconduct# A461766 when he received multiple misconducts between 2003 and 2005 for refusing to accept a cellmate.
                              Petitioner was never placed in hole (RHU) Disciplinary custody status from general population for refusing to accept a cellmate. Barbato intentionally/maliciously gives false impression that petitioner was placed in the hole, released from the hole, then returned to the hole 10 times between 2003 and 2005. Actually, petitioner had only been to the hole 4 times between 2001 to 2018.

(#12, page 30)

On page 6, Barbato states that petitioner got into a fight at S.C.I. Coal Township. Petitioner did not get into a fight at S.C.I. Coal Township and did not receive any misconducts at S.C.I. Coal Township.

On page 7, Barbato erroneously states that petitioner pled guilty to possession of weapon or implements of Escape. Actually, petitioner pled guilty to and was specifically only sentenced/convicted of possession of weapon.

On page 8 of Defendant's sentence Memorandum, Barbato states: "4. THAT HE MAY HAVE BEEN CHARGED WITH A LESSER OFFENSE IF NOT FOR HIS INCOMPETENCIES ASSOCIATED WITH BEING A YOUTH. Given the media attention given to this case at time of commonwealth's position, it is unlikely the charges would have been reduced for Mr. Noble." But that page 8, section 4 issue was not raised by prosecution. And is another example of regular pattern of Barbato making negative, confusing, unnecessary, and prejudicial statements against his client (petitioner) to help prosecution in Defendant's Sentence Memorandum. The page 8, section 4 statement in all capital letters is quoted from Miller v. Alabama, 132 S.ct. 2455 (2012), and was stated

(#12, page 31)

in Miller v. Alabama in support of Not giving juveniles extremely long sentences. Barbato mentions the supposed media effects on petitioner's case, But he did not mention that the prosecution and Judge Shad Connelly regularly reported incriminating lies to the media, public about petitioner and their discrimination against petitioner was so blatant that the public expressed concerns. See, page 5 of prosecution's 10/09/1992 Motion For Reconsideration and Modification of sentence. Judge Shad Connelly also admonished the prosecution for lying to the media/public. see, pages 25-27 of 10/20/1992 Motion For Reconsideration of Sentence Filed by prosecution.

On page 9, under "5. Possibility of Rehabilitation," Barbato states: "At time of Decertification Hearing, the expert reports stated that Mr. Noble would be amendable to treatment and recommended that he be placed in the juvenile system." Then, in order to sabotage and undermine the experts'(defense and prosecution's experts) FAVORABLE reports, Barbato states that there is no way to determine whether petitioner whether petitioner would've responded well to treatment in juvenile system and gave False impression that the experts labelled petitioner as the actual shooter. The

(#/2, page 32)

prosecution at petitioner's 1892 Decertification Hearing did not challenge the experts' Favorable reports and recommendations for petitioner. The prosecution in their 2017 Sentence Memorandum did not challenge the experts' Favorable reports and recommendations regarding Decertification, and Prosecution did not challenge said experts' reports/recommendations at petitioner's 2018 Resentence Hearing. So, it's extremely unethical, unconstitutional, and prejudicial that petitioner's own attorney (Barbato) challenged/attacked said experts' Favorable reports/recommendations. Judge Shad Connelly admitted that petitioner proved his statutory burden of need and amenability to juvenile system. See, Hearing on petitioner's 07/02/1892 Motion for New Trial, page 24                Petitioner would've thrived and responded well to juvenile system treatment. Especially, since petitioner is innocent of all charges.

    Barbato also helped craft Niles' mitigation report, po13. Attached to Defendant's 01/22/2018 sentence Memorandum was Psychologist Mitigation Specialist William Niles' 01/23/2018 Preliminary Mitigation Report and Reentry Plan. Barbato requested, and was granted, Niles to be appointed to assist Barbato in investigating and presentation of mitigating factors of petitioner's case

(#/2, page 33 )

For Resentencing and do psychological evaluation of petitioner, Mitigating Factors of petitioner's case and petitioners then 27year prison File were the two main subjects to be investigated/presented for presentence investigation/report. In Niles' 13 page 01/23/2018 mitigation Report, Niles did not present any mitigating Factors/evidence regarding petitioner's case(crimes charged, etc.). Only 11 sentences of Niles' 13 page report are related to petitioner's case (charges, conviction). Only 2 of those 11 sentences were of petitioner. The Other 9 sentences were from/about adverse alleged co-defendants (Howard and Johnson), on page 1 of Niles' report, Niles Falsely states that petitioner is "Offering" to accept a sentence of 20 to 60years, without petitioner's knowledge or consent. Despite Fact that in all interviews/letters to Niles, petitioner stated that only sentence he is requesting is "Time served," immediate release From Prison. No other sentence was discussed. Niles maliciously crafted his report to avoid any facts/evidence of petitioner's innocence and gives false impression that petitioner is agreeing to guilt. Despite Fact that petitioner always declared his innocence and Niles states in his 12/18/2017 letter to petitioner that he read petitioner's book declaring, proving his innocence, called "Erie, Pennsylvania's Betrayal of child" on www.PrisonsFoundation.org.

(#12, page 34)

Niles refused to discuss petitioner's prison file with petitioner or relevant issues about petitioner's case. Niles always falsely stated we'll discuss that "later" But never did.

Niles Falsely states petitioner was transferred to 11 different prisons after leaving S.C.I. Rockview in 2001. Actually, petitioner was only transferred 4 times from 2001 to 2018 date of Niles' report (① From S.C.I. Rockview to S.C.I. Huntingdon in 2001, ② From Huntingdon to S.C.I. Frackville in 2005, ③ From S.C.I. Frackville to S.C.I. Coal Township in 2006, and ④ From S.C.I. Coal Township to S.C.I. Greene in 2007). Niles' report Falsely states that petitioner's only education while in prison was GED and Desk top publishing.

Niles' report Falsely states that petitioner agreed to Mental health treatment that Niles and petitioner never discussed.

At petitioner's 01/29/2018 Resentencing, Niles admits that he did not do the full evaluation of petitioner he was appointed, but not qualified, to do and that he did not request or review petitioner's entire prison file relevant to resentencing. Niles only reviewed and agreed with portions of petitioner's prison file provided by prosecution, called "Juvenile Lifer Information Packet," and prosecution's negative, false, misleading interpretation of it.

(#12, page 35)

       On page 1 of prosecution's 11/30/2017 Resentence Memorandum, prosecution mention false allegation of an alleged attempted store robbery on 01/17/1991 (day before the shooting) that Judge shad connelly stated at original sentencing in 1992 and 2018 Resentencing would not be considered because there is No evidence it ever happened. Said unsubstantiated prior bad acts was introduced at trial by adverse alleged co-defendant Howard, N.T. 06/04/1992, and some of Howard's and Johnson's later statements to police. Howard's initial interrogation lasted 3 hours and 55 minutes and Johnson's initial interrogation lasted 1 hour and 40 minutes. But there is No mention of the alleged attempted store robbery in their initial statements. There was No attempted store robbery(s). The alleged convenience Store Robbery "targets" or victims (Store clerks) gave Statements to police, media, defense and prosecution Stating they remembered petitioner, Howard, and Johnson in the store, No attempted robbery happened, and Nothing out of the ordinary happened. No one was Charged for said falsely alleged incident. No One Subpoenaed said Store clerks to testify at trial. Said store clerks didn't testify at trial. At trial, Howard's testimony about said unsubstantiated prior acts were allowed by the court.
       On page 3 of prosecution's 11/30/2017 sentence Memorandum, prosecution references information from petitioner's 1992 Decertification Hearing when stating that petitioner "had a number of school suspensions due

(#12, page 36 )

to disrespectful behavior, vulgarity toward staff, and skipping school." But prosecution deceptively does not mention the year, number or type of school suspensions. However, in the same Decertification Hearing transcript, petitioner's teachers and school principal testified that petitioner is shy, quiet, and respectful to staff. Some of the school suspensions were in-school suspensions. Meaning: served at, present in school. Expert psychologist (Dr. McGarrey) testified that petitioner is shy, passive, quiet and would be victimized in adult prison, and Not prone to anger or hostility. (05/04/1982 Decertification Hearing Transcript, p. 41-47). The prosecution's expert forensic psychiatrist (Dr. Tronetti) agreed with Dr. McGarrey at said hearing and in his psychiatric evaluation. See, 05/07/1982 Decertification Hearing Transcript. Judge connelly told petitioner that he is not allowed to mention Decertification at Resentence Hearing.

   On page 6 of Niles'/Barbato's 01/23/2018 so-called mitigation report, it falsely states that petitioner threatened to kill Robert Williamson in March 1991. Petitioner never threatened to kill Robert Williamson.

   At petitioner's 01/29/2018 Resentence Hearing, Judge shad connelly recanted the only reason he denied decertifying petitioner to juvenile system.

(#12, page 37)

       Barbato refused to file a Motion for Reconsideration and Modification of sentence, despite fact that petitioner always told Barbato and court that any sentence that's not time served, immediate release from prison would be appealed. But Barbato didn't file said motion and allowed petitioner's appeal rights to expire. So, a motion to reinstate petitioner's appeal rights had to be filed.

       Considering the foregoing, it's obvious that Barbato and Barbato's Mitigation Specialist (Niles) were only working against petitioner to help prosecution. Judge connelly was repeatedly made aware of said conflicts of interests by petitioner and Barbato and repeatedly denied requests to replace Barbato, even after Barbato notified judge connelly in his 04/09/2018 (docked 04/10/2018) "Motion to Withdraw as counsel" of conflict of interest including petitioner filing complaint to office of Disciplinary Counsel about Barbato's violations of PA. Rules of Professional conduct. Petitioner was forced to file Motion to represent himself in order to get Barbato off his case and stop Barbato from violating/sabotaging petitioner's rights, court process.

    The foregoing pages verify that the presentence report is based on negative, false/misleading information.

(#12, page 38 )

40 years to Life is a manifestly excessive sentence, too severe a punishment and bias, at too, because the U.S. Sentencing Commission defines a life sentence as 470 months (approximately 39 years and 3 months), based on life expectancy of those serving prison sentences. See, U.S. v. Nelson, 481 A.3d 344, 349-50 (7th cir. 2007). So, appellant's minimum sentence (40 years) is still a life sentence. The sentence does not provide meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation and does not comply with Miller v. Alabama's requirement that sentences be tailored to child's individual level of culpability.

The court ignored/violated Ex Post Facto Laws in sentencing appellant. Ex Post Facto Clauses prohibit subsequent laws from inflicting greater punishments than punishments for crime when the crime was committed. See, Pa. const. Art. 9, sec 17; U.S. Constitution Art. I, ; sec. 10.                         At the time of appellant's alleged offense (1991), no constitutional statutory sentencing scheme existed, therefore the only constitutional sentence available to appellant at time offenses and conviction was for the most serious

(#/2, page 39)

lesser included offense of third degree murder, which sentence in 1991//1992 was 10 to 20 years.

Judge shad Connelly's and prosecution's bias, manifestly unreasonable, partial, ill-will, and prejudice against appellant is a continuing pattern. Appellant did Not Kill or conspire to Kill anyone and appellant did Not rob or conspire to Rob anyone. Appellant did Not take anything from the victim and did Not touch anything taken from the victim. See, Trial Transcript Notes of Testimony ("N.T."), 06/03/1992  and 06/04/1992; Notes of Testimony ("N.T.") 06/05/1992, p. 33-34. Judge Connelly always falsely accused appellant of being the actual shooter and made his decisions based on such. At appellant's 09/29/1992 Sentencing, Judge connelly falsely accused appellant of being actual shooter ("Killer") and stated that he is specifically Sentencing appellant for killing the victim ("Mr. Richard stevens"). On page 15 of the 09/29/1992 Sentencing Transcript, , Judge connelly stated: "There is No doubt in my mind that you were the person who pulled the trigger that ended the life of Mr. Richard stevens and for that you must now be sentenced." on page 3 of prosecution's July 28, 1992 Motion To Sentence (docketed on August 4, 1992), the prosecution stated that No evidence ever existed to establish appellant as the actual shooter. Appellant doesn't Know who was actual shooter.

In Judge Connelly's 02/08/1993 Memorandum opinion he stated that the only reason he

(#12, page 40)

denied decertification of appellant to juvenile system in May 1992 was his false/baseless statement that "uncontradicted evidence" proved that appellant was the actual shooter, see, page 12 of 02/08/1993 Memorandum opinion. But Judge shad connelly transferred alleged co-defendant Stephon Johnson ("Johnson") to juvenile system and Johnson was released after a short juvenile sentence, despite: (a) Antimony and Barium tests revealed that the only defendant with gun powder residue on his hands was the oldest defendant (Johnson); N.T. 06/02/1992 and 06/04/1992; (b) the only defendant with blood on their clothing was Johnson, N.T. 06/03/1992; (c) defendant Howard testified that he and Johnson conspired to falsely accuse appellant of being actual shooter, N.T. 06/02/1992 and 06/05/1992, p. 33-34; (d) defendant Howard testified that defendant Johnson was the actual shooter, N.T. 06/04/1992 and 06/05/1992, p. 5 and 24; (e) all witnesses (defense and prosecution) recommended that appellant be placed in juvenile system, including the same prosecution expert witness who recommended that defendant Johnson Not be placed in juvenile system, see, 05/04/1992, and 05/07/1992, p. 6-7, of Decertification Hearing Transcript; (f) defendant Howard gave the gun (alleged Murder Weapon) to police and stated that he stole the gun from his aunt two weeks before coming in contact with appellant and the shooting happened. N.T., 06/04/1992 and 06/05/1992, p. 18-19. But appellant was the only defendant charged with possessing a firearm. 40 years to life is cruel and unusual punishment.

( #12, page 41 )

At petitioner's 01/29/2018 Resentencing Hearing, Judge connelly stated that he is not considering petitioner's individual alleged level of culpability and participation in crime charged, and that's not relevant to Resentencing. Pages 2-4 and 29-31 of 01/29/2018 Resentence Transcript.

A motion challenging restitution is not subject to timeliness restraints. The court at anytime can reconsider and modify restitution. A challenge to illegal sentence is non-waivable. When imposing restitution, the sentencing judge should consider whether defendant received notice of intent to seek restitution prior to the hearing and whether defendant intends to object to imposition of restitution. Pa.R.Crim.P. 705.1.

Petitioner always stated that he is innocent of all charges (Felony Murder, Robbery, and conspiracy to Robbery) against him and should not be convicted, sentenced, or punished in any way for said charges. 01/29/2018 Resentencing Transcript ("R.T."), p.2,29, 32, 38,40,41, and 43.

At petitioner's original sentencing in 1992, petitioner was a juvenile (16 years old) and had No understanding of said proceeding. R.T., p. 39-44,

(#12, page __42__ )

During petitioner's original 09/28/1992 sentencing,
Judge connelly asked petitioner's ~~court~~ court-appointed
attorney (James Moran) if petitioner would be
willing to "make" restitution. At said time, attorney
Moran asked Judge connelly for "a second" to
speak to petitioner. Then, off-the-record, attorney
Moran quickly told petitioner that he has to agree
to make restitution when being sentenced. So,
16 year old petitioner, ingnorantly, unaintelligently
involuntarily, and without proper understanding
agreed to make restitution. 09/28/1992 sentence
Transcript, p. 10. Even though, petitioner continued
to state that he is innocent of all charges and
attorney moran continue to appeal judge connelly's
denial of petitioner's request for demurrer to
all charges, said agreeing to restitution prejudices
petitioner's sentence and conviction severely and
was a manifest miscarriage of Justice. It's obvious
that petitioner wasn't notified of intent to
seek restitution before 09/28/1992 sentencing and
did not understand what agreeing to make
restitution connotes and it's consequences.
Petitioner objects to having to pay restitution.

    At petitioner's 09/29/1992 and 01/29/2018
sentencing, Judge Connelly did not state whether

(#/2, page _43_ )

restitution was imposed as part of sentence per
18 Pa.C.S. 1106 or as condition of probation per
42 Pa.C.S. 9754. Pa. R. crim. P.705.1(B)(6) requires such
clarification. Also, trial court lacks authority
to impose costs associated with resentencing
proceeding necessitated by imposition of prior
illegal sentence. Petitioner's counsel (James moran)
was ineffective/erred by telling petitioner to agree to
pay restitution a 09/29/1992 sentencing.

3. The court abused discretion and violated 1, 5, 6, 8, and
14 Amendments of u.s. constitution by relying on false,
misleading, and inaccurate information to decide sentence.
Supporting facts; The court violated u.s. const. Amends. 1, 5,
6, 8, and 14, due process, equal protection, cruel/unusual punishment,
freespeech by relying on false, misleading, and inaccurate
information to decide sentence. See, pages 9-37 of Ground
#2 of this petition.

4. The court abused discretion and violated
u.s. const. Amends. 1, 5, 6, 8, and 14 by ignoring
petitioner's possible and/or actual Rehabilitative
needs including, but not limited to, Mental health
Rehabilitation.
Supporting Facts: The court abused discretion and
violated u.s. const. Amends. 1, 5, 6, 8, and 14 by ignoring
petitioner's possible and/or actual Rehabilitative
needs, including mental health rehabilitation. At
petitioner's 1992 Decertification Hearing, expert

(#12, page 44)

phychologist, Dr. McGarrey, testified that petitioner is shy, quiet, passive, not prone to anger or hostility, would be victimized in adult prison system, should be placed in juvenile system, and placing petitioner in adult prison system would have a significant negative impact and effect on petitioner. p. 33,43, 44-46 of 05/04/1992 Decertification Transcript. The prosecution's expert psychiatrist (Dr. Tronetti) agreed with Dr. McGarrey. 05/07/1992 Decertification Hearing. The prosecution never challenged their reports/recommendations.

For petitioner's 2018 Reseatencing, petitioner's attorney (Robert Barbato) requested (and was granted) that psychologist William Niles ("Niles") be mitigation Specialist. Niles testified that petitioner's case was first time doing a mitigation report, 01/29/2018 Resentence Transcript p. 45, that he is concerned for petitioner's mental health and that petitioner is suffering from a history of significant trauma that Niles was not qualified to diagnose and recommended that a more qualified psychologist be appointed to make said evaluation and make said diagnosis. 01/03/2018 Motion for Appointment of psychologist. Judge Connelly denied said request. Niles admitted that he did not do a complete/sufficient presentence

(#12, page 45)

investigation and evaluation and did not request or review petitioner's entire relevant prison file and only relied on portions and interpretations of petitioner's prison file (Juvenile Lifer Info. Packet) provided by prosecution. 01/29/2018 Reseatence Hearing Transcript, p. 46.

Also, petitioner has experienced <u>involuntary</u> long-term solitary confinement from <u>2006 to 2013</u> and <u>2014 to 2023</u>, which is known to have significant mental and physical damaging effects.

In Peansylvania Superior Court's 04/15/2019 opinion, <u>page 15</u>, <u>footnote 10</u>, <u>superior court</u> state that on remand petitioner can raise question of trial court's (Judge connelly's) consideration of petitioner's rehabilitative needs and "the trial court would then be able to address <u>the extent of its consideration</u> of petitioner's rehabilitative needs, including mental health rehabilitative needs, <u>in any future opinion</u>. The trial court's analysis of petitioner's rehabilitative needs <u>consists of one sentence</u>." The Superior court ruled that judge connelly's <u>one sentence</u> analysis is <u>insufficient</u>. But, on remand, Judge Mead only stated in his 02/14/2020 memorandum opinion (1925(a)) that "Judge shad connelly considered appellant's possible and/or actual rehabilitative needs at time of sentencing."

(#2, page _46_)

   5. The court abused discretion and violated
U.S.Const.Amends. 4,5,6,8 and 14 by denying Motion
for psychologist to do full evaluation of petitioner
and make diagnosis appointed mitigation specialist
wasn't qualified to do. Thus, ignoring petitioner's
possible and/or actual Rehabilitative needs.
   <u>Supporting Facts:</u> Due process, equal protection,
cruel/unusual punishment, access to court, free
speech and effective representation were
violated by court's denial of Motion for
Psychologist to do full psychological evaluation of
petitioner. see, pages _43-46_ of <u>Ground #4</u> of
this petition.

   6. Mitigation specialist violated U.S.const.
Amends. 1,5,6,8, and 14 by providing incomplete
evaluation and report with false/misleading negative
information and giving weak undermining testimony.
   <u>Supporting Facts:</u> Petitioner's court appointed
mitigation specialist (william Niles) violated due
process, equal protection, cruel/unusual punishment,
right to fair court proceeding, effective representation
by providing incomplete, false, misleading evaluation
and report and giving intentional/malicious undermining
weak testimony at Resentencing. see, pages _32-37_ of
<u>Ground #3</u> and pages 43-46 of <u>Ground #4</u> of this petition.

   7. The court abused discretion and violated
U.S.Const.Amends. 1,5,6,8, and 14 at Resentencing
hearing by prohibiting petitioner to <u>address/correct</u>
negative, false, misleading **documents** and averments
made against petitioner by petitioner's attorney
(Robert Barbato) and prosecution in their Sentence
Memorandums.

(#2, page _47_)

   Supporting Facts: The court abused discretion and
   united States Constitution
   violated due process, equal protection, free speech,
   cruel/unusual punishment, right to fair hearing by
   refusing to allow petitioner to address/correct negative,
   false, and misleading documents and averments
   made against petitioner by petitioner's attorney
   (Robert Barbato) and prosecution in their sentence
   memorandums for petitioner's 01/29/2018 Resentencing.
   See, pages _9-37_ of Ground #2 of this petition.

      9. The COURT abused discretion and violated
   U.S. Const. Amends. 1, 5, 6, 8, and 14 by ignoring/not addressing
   the abuse of discretion/biasness issue of Resentencing
   Judge claiming it was mandatory to give Juvenile
   Lifer petitioner a max (tail) date of Life for
   Resentencing, but, two months earlier, same judge
   gave petitioner's alleged co-defeadant Juvenile
   Lifer a max(tail) date of 50years Resentencing.
   Supporting Facts: The courts abused discretion and
   violated due process, equal protection, cruel/unusual punishment,
   right fair hearing, access to courts of U.S. constitution
   by ignoring/not addressing the biasness, ill-will of
   Resentencing judge shad connelly claiming it was
   mandatory to give Juvenile Lifer petitioner a max (tail)
   date of life for Resentencing because petitioner
   was a Juvenile lifer convicted of First degree murder,
   despite fact that petitioner was convicted of
   Second degree murder and, two months earlier, the
   same judge gave one of petitioner's alleged co-defendants
   (a juvenile lifer) a max date of 50 years. See,
   pages _7-8_ of Ground #2 of this petition.

( #/2, page 48 )

9. Pennsylvania's Law to not consider a defendant's alleged individual level of culpability and participation in crime charged with multiple defendants unless District Attorney is seeking a Life without Parole sentence is unconstitutional.

Supporting Facts: Pennsylvania's law to not consider a defendant's alleged individual level of culpability and participation in crime charged with multiple defendants unless District Attorney is seeking a Life without Parole sentence violates due process, equal protection, right to fair hearing, cruel and unusual punishment of u.s. constitution. Especially, since defendants can still be sentenced to Life without Parole. At petitioner's Resentencing, judge connelly refused to consider the alleged individual level of culpability of petitioner in crime charged and two other defendants because judge connelly and prosecution could never state or prove any level of culpability or participation of petitioner on any charge. 01/29/2018 Resentence Transcript, p. 2-4, 29-31.

10. The court reporter and the court violated u.s. constitution Amendments 1, 5, 6, 8, and 14 and prejudiced petitioner's present and future and past Court proceedings by providing inaccurate Resentence Hearing transcript/transcription.

Supporting Facts: The court reporter and the

(#12, page <u>44</u>)

Court (Judge Connelly) violated due process, equal protection, right to fair hearing, access to court, cruel and unusual punishment of u.s. constitution by prejudicing petitioner's past, present, and future court proceedings by providing inaccurate Resentence Hearing transcript.

Petitioner received a copy of his 01/29/2018 Resentence Hearing Transcript transcribed by official Court Reporter Gregory S. Scherf and approved/directed to be filed by Judge Shad Connelly, and noticed it was not accurate, true, and correct.

There is nothing about petitioner's voice or speaking that would make it hard for anyone to understand. Petitioner speaks very clearly, does not studder, was speaking into a microphone at Reseatence Hearing, and English is the language petitioner was born/raised speaking.

Many of the errors in the transcript/transcription of Reseatence Hearing Transcript include, but are not limited to, the following:

(a) <u>page 44, line 2</u>, transcript erroneously states:

(#12, page 30)

"...facts in this case." Appellant actually said: "...Facts and evidence."

(b) page 44, lines 9-15, Resentencing Hearing Transcript ("Transcript") erroneously states: "And, also, to the defendant-defendants, Stephon Johnson, the forgotten defendant in this case, who I only knew for two years, I hope that you are living your life in society and can be an outstanding role model and citizen that judge shad connelly's 1992 decision promised you were. I do not wish prison on anyone, especially a child." Appellant actually said, while reading from paper in hand, : "To stephon Johnson (the forgotten defendant), who I only knew for two DAYS, I hope that you have been living your life in society to be the outstanding role model citizen that judge shad connelly's 1992 decision promised you were and would be. I do not wish prison on anyone, especially a child." All of defendant Johnson's statements to police verify that appellant only met Johnson the day before the shooting. Also, transcripts of other proceedings and Howard's statements.

(c) page 40, lines 10-11, transcript erroneously states: "As far as the legal system, I didn't know if it's all fifteen or one." Appellant actually said: "As far as the legal system, I didn't know or understand the law at age 15."

(d) page 32, lines 14-16, transcript erroneously states: "That's exactly why I'm declaring my innocence with innocence project.org showing proof of my innocence." That's 100% false and further evidence that the erroneous

(#12, page 59)

transcription/transcript of appellant's Resentence Hearing is intentional and malicious. Appellant never mentioned the innocenceproject.org. Appellant actually said: "That's why I wrote and put my book, 'Erie, Pennsylvania's Betrayal of Child,' declaring and proving my innocence, on Prisonsfoundation.org." All references to anything appellant wrote and websites appellant mentioned during the Resentence Hearing were intentionally/maliciously not mentioned in the transcript of the Resentence Hearing transcribed by Gregory Scherf.

(e) page 38, lines 19-20, transcript erroneously states: "You know, I would speak up, but when I do speak, it's with substance." Appellant actually said: "I don't speak much. But when I do speak, it's with substance."

(f) The entire page 37 is erroneously/carelessly transcribed. Page 37 lines 1-3, transcript erroneously states: "I got my GED. And even after that, I also got a degree in African American History and science." Appellant actually said: "I got certificates in Psychology, African American History and science." Psychology was left out of the transcript. There is a big difference between having a "Degree" in something and having a "Certificate". A "Degree" has more value, prominence and indicates a higher level of study/education than a "certificate." Appellant wasn't allow- ed to state his other education certificates.

(g) page 37, lines 12-25 are so erroneously/carelessly transcribed that it changed the meaning of what was actually said. Page 37, line 13, transcript erroneously states:

(#12, page 37)

"... hold myself." Appellant actually said: "help myself."
    (h) page 37, lines 15-25, transcript erroneously states:
"... to advocate on behalf of prisoners who have no -- who can
not help themselves, who have been punished, exposing that,
like mistreatment, abuse, prison, solitary confinement, S.c.I. Greene,
because it also gets into the U.S. Department of Justice. It
helped them investigate the wrongs committed against prisoners.
And also to find ways to help, treat, and resolve those issues.
I also wrote a lot of things like solitary -- about the negative
affects of solitary confinement, to better ourselves."
Appellant actually said: "And advocate on behalf of prisoners who
have no voice, who cannot help or defend themselves and
other injustices. Some of the things I wrote exposing that
have been published on various websites like an article I
wrote titled 'Witness to Mistreatment/Abuse of Mentally Ill
Prisoners in Solitary Confinement at S.C.I. Greene' that was published
on Decarcerate PA website and submitted to the U.S.
Department of Justice. It helped them investigate wrongs
prison staff commit against prisoners. Also, some of the
things I've written, like 'RHU Parallel,' were published on
Solitary Watch.com about the negative effects of solitary
confinement and ways to help treat and resolve those issues."
NOTE: "Witness To Mistreatment/Abuse of Mentally Ill
Prisoners In Solitary Confinement at S.C.I. Greene." was
sent to Court by appellant and docketed by court on
10/16/2017 because it was attached to "Defendant's

(#12, page ~~73~~ )

Statement: Misconduct #B266541." But <u>appellant's attorney</u> never submitted, mentioned, considered or used "Defendant's Statement: Misconduct #B266541." even though it was relevant.

(i) <u>page 36, line 17</u>, transcript erroneously states: "evolved". <u>Actually appellant said</u>: "devolved."

(j) <u>page 35, lines 6-15</u>, transcript erroneously states: "That's why. And the sentence, as I stated in my PCRA -- And it has to do with -- It has to do with sentencing scheme that was not available, and at the time, the sentencing scheme has greater <u>analyzed</u> third degree at the time of the alleged offenses would violate my due process, ex post facto." <u>Appellant actually stated</u>, While reading from his PCRA petition in front of him, "Any sentencing term greater than <u>authorized</u> for third degree murder at the time of the alleged offenses would violate due process, ex post facto..." Then, Judge Shad Connelly interrupted/cut off appellant.

(K) <u>page 29, lines 3-16</u>, transcript erroneously states: "Well, your honor, at first I had requested that -- I know some of my family members had wrote letters -- support letters to the court and wanted to testify on my behalf, but I asked them not to because letters of support for the court are enough. There is no reason for them to testify, impact of the incident, their lives, character getting attacked, put on trial in a public display, however, I would like to say now, I'm glad that Mr. Barbato did do that. So, I'm saying that out of respect for Mr. Barbato, and <u>stuff</u> I had

(#12, page 54)

told him previously and why he did it." <u>Appellant actually</u>
<u>said:</u> "Some of my family members wrote letters of
support and submitted them to the court and wanted to
take the stand to testify on my behalf. But I asked them
not to because their letters of support on court record
are enough and there is no need for them to testify, re-live
<u>the impact of the incident</u>, and <u>have their lives and character</u>
<u>unjustly attacked</u> and put on trial, public display. However,
I'm glad that they did. I'm saying that in respect to what
I previously told Barbato <u>about them not testifying and why.</u>"

(l) <u>page 23, line 24,</u> transcript erroneously states:
"dry". <u>Carlajzah actually said:</u> "try."

(m) <u>page 23, lines 13-20,</u> transcript left out significant
amount of Carlajzah Mendez's (appellant's niece) testimony
regarding support of appellant, appellant's positive communicat-
ion with her and appellant's positive impact.

(n) <u>page 2, lines 11-13,</u> transcript erroneously states:
"I never agreed to, or authorized my <u>attorney</u> to submit a
request for a sentence of 20 to 60 years." <u>Appellant actually</u>
<u>said:</u> "I never agreed to, <u>requested</u>, or authorized
my attorney ("Robert Barbato") <u>or mitigation specialist</u>
("William <u>Niles</u>") to submit a request for a 20 to 60
year sentence."

(o) Transcript also <u>regularly states</u> throughout the
transcript that people said: "... <u>and stuff</u>" when people
never said: "and" or "stuff."

(#12, page 55)

(P) Transcript regularly states that appellant said: "You know." Even though, appellant did not say: "You know."

The Resentence Hearing Transcipt/Transcription makes appellant seem confused, unintelligent, not making sense, and with mental and/or verbal disability at times. Gregory S. scherf's transcription of the Resentence hearing is, among other things, intentional, maliciously, unethical, reckless, callous, grossly negligent, and prejudices appellant's present and future proceedings. Especially, since it continues a pattern of Judge Connelly's/prosecution's history of providing/spreading false/misleading information about appellant to the media, public, and Courts. Judge shad Connelly approved and directed for said erroneous transcipt transcription and refused to correct it.

(#12, page 56 )

11. Attorney Robert Barbato was ineffective/erred by not objecting to and seeking to correct errors in Resenteace Hearing Transcript/transcription, thus prejudicing petitioner's past, present, and future Court proceedings.

Supporting Facts: Attorney Robert Barbato was ineffective and erred by not objecting to and seeking to correct errors in Resenteace Hearing Transcript/transcription, thus prejudicing petitioner's past, present, and future court proceedings and violating due process, equal protection, free speech, cruel/unusual punishment, right to fair hearing of u.s. constitution. See, pages 48-55 of this petition of Ground 2.

12. No evidence supports a sentence or conviction on Felony Murder, Robbery, conspiracy to Robbery, or decertification denial.

Supporting Facts: No evidence supports a sentence or conviction on Felony Murder, Robbery, conspiracy to Robbery or decertification denial, thus violating due process, equal protection, cruel/unusual punishment of u.s. constitution. See, pages 3-5 of Ground 1 and

(#12, page 57)

pages 6-44 of Ground #2 of this petition; 05/29/1992 to 6/05/1992 Trial Transcript; "Resentencing: Erie, Pennsylvania's Betrayal of Child, Book Three" by Ricardo Noble can be read/downloaded for free at: www.prisonsfoundation.org. Petitioner is innocent of all charges.

13. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective, prejudiced petitioner by maliciously/falsely stating in sentence Memerandum that petitioner doesn't deny being guilty without petitioner's knowledge or consent, despite knowing that petitioner always stated (and the evidence proved) he is innocent of all charges, thus violating u.s. constitution Amendments (u.s. const. Amends.) 1, 5, 6, 8, and 14.

Supporting Facts: The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective and prejudiced petitioner by maliciously/falsely stating in sentence Memorandum that petitioner doesn't deny being guilty without petitioner's knowledge or consent, despite knowing that petitioner always stated (and the evidence proved) he is innocent of all charges (second Degree Murder, Robbery, and Conspiracy to Robbery), violating u.s. const. Amends. 1, 5, 6, 8, and 14, due process, equal protection, effective assistance of counsel, cruel/unusual punishment. See, pages 9-12 of Ground #2 of this petition.

( #12, page 5B )

14. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective and prejudiced petitioner by requesting 20 to 60 year sentence in Sentence Memorandum without petitioner's knowledge or consent, then against petitioner's repeated objections at Resentencing Hearing, thus violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts : See, pages 13-14 of Ground #2 of this petition. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective and prejudiced petitioner by requesting 20 to 60 year sentence without petitioner's knowledge or consent and against petitioner's repeated objections.

15. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective/erred by withholding documents and refusing to communicate with petitioner about case, thus violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts : See, pages 13-14 of Ground #2.

16. The cocaine/marijuana addicted attorney (Robert Barbato) was ineffective/erred by making negative, false, and misleading statements against petitioner in defendant's sentencing memorandum and only reviewed and agreed with portions of petitioner's prison file provided by prosecution and prosecution's negative, false, and misleading interpretation of it, violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts : See, pages 14-38 of Ground #2 of this petition. Attorney Robert Barbato's drug addiction may have influenced/contributed to some of his incompetencies and malicious ineffectiveness in representing petitioner and may have made him more susceptible/prone to accept unconstitutional deals/requests from judges, prosecutors, and law enforcement to work against petitioner. But may not excuse all of his incompetencies/ineffective representation.

( #12, page 58 )

17. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective by not objecting to prosecution's negative, false, and misleading, prejudicial statements in Sentence Memorandum and actions/statements at Re-sentence Hearing, violating u.s. const. Amends. 1, 5, 6, 8, and 14.

<u>Supporting Facts</u>: See, pages <u>14-38</u> of <u>Ground 2</u> of this petition.

18. The cocaine/marijuana addicted court appointed attorney (Robert Barbato) was ineffective by knowingly compiling and submitting incomplete mitigation evaluation and report with negative, false, misleading information, thus violating u.s. const. Amends. 1, 5, 6, 8, and 14.

<u>Supporting Facts</u>: See, pages <u>32-34, 36</u> of <u>Ground #2</u> of this petition.

19. The cocaine/marijuana addicted Resentencing attorney (Robert Barbato) was ineffective/erred by attacking the <u>FAVORABLE</u> recommendations of expert witnesses who recommended placing petitioner in juvenile system at 1992 Decertification Hearing in 01/22/2018 Sentence Memorandum made by attorney Barbato.

<u>Supporting Facts</u>: See, page <u>31-32</u> of <u>Ground #2</u> of this petition.

20. The cocaine/marijuana addicted attorney Robert Barbato was ineffective/erred by not filing motion to Modify and Reconsider Sentence, violating u.s. const. Amends. 1, 5, 6, 8, and 14.

<u>Supporting Facts</u>: See, pages <u>37</u> of <u>Ground #2</u> of this petition.

(#12, p. 60)

21. The cocaine/marijuana addicted attorney Robert Barbato was ineffective/erred by only mentioning two of the Nine education course certificates of completion petitioner received before his Resentencing, violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts: see, pages 26, 34 of Ground #2 of this petition.

22. Petitioner's Resentencing attorney (Robert Barbato) was ineffective/erred by refusing to mention that only defendant with gun powder residue on their hands was Stephon Johnson, alleged Co-defendant Antonio Howard testified that he saw defendant Stephon Johnson shoot the victim, and only defendants' fingerprints found on victim's possessions taken were Howard's and Johnson's, violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts: see, pages 39-40 of Ground #2 of this petition.

23. Resentencing judge (shad connelly) abused discretion and violated U.S. const. Amends. 1, 5, 6, 8, and 14 by refusing to replace petitioner's unethical attorney (Robert Barbato) after repeatedly being made aware of conflicts of interests and Barbato working with prosecution against petitioner, violating U.S. const. Amends. 1, 5, 6, 8, and 14.

Supporting Facts: see, pages 9-37 of Ground #2 of this petition.

24. A sentence and conviction form a single judgment for purposes of appeal review, thus re-opening or new judgment of sentence challenge for review also allows challenging conviction errors for review.

Supporting Facts: see, pages 9-10 of Ground 2 of this petition.

25. Trial judge (shad connelly) abused discretion and violated U.S. const. Amends. 1, 5, 6, 8, and 14 by denying demurrer to all charges at trial.

Supporting Facts: see, pages 39-40 of Ground #2 of

( #12, p.61 )

this petition. Also,

Trial judge (Shad Connelly) erred/abused discretion by denying petitioner's demurrer to all charges (Second Degree Murder, Robbery, Conspiracy to Robbery, Theft by unlawful Taking or Disposition, and Receiving stolen property), despite fact that at time of petitioner's counsel's (James Moran's) 06/04/1992 demurrer request, after prosecution closed it's case in-chief, the trial testimony/evidence revealed that only defendant with gun powder residue on their hands was Johnson, N.T. 6/02/1992 only defendant with blood on their clothes was Johnson, N.T. 6/3/1992, only defendants' fingerprints on items taken from victim were Johnson's and Howard's, N.T. 6/3/1992, Also, defendant Howard testified that defendant Johnson and defendant Howard conspired to Falsely accuse petitioner of being actual shooter, Howard saw defendant Johnson shoot the victim, and petitioner did not conspire to rob or kill the victim. N.T. 06/05/1992

Judge connelly also stated that "It's a very close call" regarding whether or not prosecution presented enough evidence to get passed petitioner's demurrer. N.T., 06/04/1992, p. 73. Nothing supported a charge or conviction on any of charges against petitioner.

(#/2, page 62)

26. Trial Judge (shad connelly) abused discretion and violated u.s. Const. Amends. 1, 5, 6, 8 and 14 by restricting petitioner's trial attorney (James moran) cross-examination of prosecution witness.

Supporting Facts: At trial, judge shad connelly restricted petitioner's attorney (James Moran) cross-examination of prosecution witness (Diedra Carr) as to alleged stated intentions of the stated defendants before entering the cab. 06/02/1992 N.T., p. 145. Despite fact that prosecutor had elicited hearsay declarations of same alleged co-defendants, through same witness, only moments before, to establish why Diedra Carr made phone call to summon cab at request of defendant stephon Johnson. N.t. 06/02/1992, p. 132. Page 23 of Judge Connelly's 02/08/1993 Memorandum opinion, judge connelly concedes/admits that he may have erred by denying said testimony.

27. Trial Judge (shad connelly) abused discretion and violated u.s. const. Amends. 1, 5, 6, 8, and 14 by allowing testimony at trial of unsubstantiated prior bad acts. Supporting Facts: see, pages 35 of Ground #2 of this petition.

28. Trial Judge (shad connelly) abused discretion and violated u.s. Const. Amends. 1, 5, 6, 8, and 14 by refusing to strike prospective jurors for Cause who expressed disqualifying views.

Supporting Facts:

Petitioner was convicted by a jury of the prosecution's peers and other disqualifying issues.

On two different days, Juror Mary Hayes requested to be removed from jury because she can't be fair and impartial since she personally knows too many people from prosecution directly involved in the case including, but not limited to, adverse alleged co-defendant Stephon Johnson's Erie Police Officer Cousin ("Jerome Odom"). But Judge Connelly refused to remove her and petitioner's attorney (James Moran) did not challenge, strike or request she be removed for cause. N.T., 05/28/1992, p. 104-106; N.T., 06/01/1992, p. 35.

Prospective juror Marjorie Meneely stated that fact that hand gun was used in case would negatively influence her and she believes a prosecution witness over a defense witness. Defendant Howard's attorney (Gilmore) and petitioner's attorney (Moran) requested that she be striken for cause. Judge Connelly denied their request. 05/28/1992, N.T., p. 42 to 51. Petitioner's attorney was forced to use a pre-emptory strike to remove her. Id.

(#12, page 64)

Transcript
Page

## JURY selected on 05/29/1992

1) p. 36 - | Alfred Farmer — Was victim of Burglary in 1984.
40 ) | Heard from media cab driver killed and they found
who did it. Personally knows Detective Johns (involved in case)

2) p. 52 - | Lee J. Ulmer - Friends with Police Officer Henry Joyce
59 ) | (involved in case), known him for 8 years. Personally knows
Officer Jerome Odom (involved in case). Has a friend or
family member (Corby House) who works for same
cab company as the victim. Heard about case. Indicated
on Voire Diere form that he would believe a witness
called by prosecution over a defense witness because
they are called by the prosecution. Judge connelly
coached him, then he changed his response.

3) p. 68 - | William Peterson — Stated that he heard about case
71 | through media and wrote on questionnaire that he
has a fixed opinion of guilt. Judge connelly coached
him. Then he stated he don't have a fixed guilt opinion.

4) p. 75 - | Eveline Warcho — Heard about case from news. Always watches
78 | the news.

5) p. 104 - | Mary L. Hayes - Personally knows Officer Odom and
108 | his daughter (Toby Odom) was one her students. Stated
on form that she had a problem with sitting on this case Jury.
She is Director of upward bound program at Gannon university,
a college preparatory for Students in 9 through 12th grade.
Judge connelly coached her too on 06/01/1992, in judge connelly's chambers,
told Judge she can't be fair/impartial, personally knows alot of
prosecution witnesses, N.T., 06/01/1992, p. 3-5.

6) p. 128 - | Natalie Wiesen — Asked 3 questions. Then accepted as juror.
130 |

(#12, page 63)

9) p. 148 — Ronald A. Bruce — Has friends who work and worked
to
146  for cab company. Recently friend or family member was
     victim of motorcycle and bycycle parts theft.
     Coached by Judge Connelly. Heard about case.

9) p. 156 — Geraldine Avery — Heard about case.
to
159

9) p. 159 — Roger Stone — Daughter is a federal officer. Knows
to
162  personally Mark Watts who works in District Attorney's
     office. Heard about case.

                     Heard about case. Watts is a Detective.
10) p. 163 — Sue E. Ball — Knows Mark Watts who works for D.A. office
to
166

11) p. 172 — Lean Costello — Heard about case. States saw on news
to
184  only two men involved in case. States that mere fact
     person has gun indicates intent (guilt). has prejudice
     because of gun. coached by Judge Connelly. Obviously
     had opinion of guilt but connlly cut her off and
     wouldn't let Moran or Gilmore follow-up.

                     — was a secretary at D.A's office.
12) p. 184 — Jayce McNaughton — Knows various people at D.A's office,
to                                                Watts
188  including D.A. and Detective Watts. she worked at
     D.A.'s office for 14 years. Known Officer sergeant Roberts
                                          Heard
     and his family since he was 4 years old. Knows about case.

                     Alternate Jurors

p. 191 — Jeff Hart — Knows people who work for cab company.
to
194

p. 205 — Michael Kelley — Heard about case. Knows coroner Merle
to
208  wood. Kelley is a paramedic.

(#/2, page 66)

29. Trial Judge (Shad Connelly) abused discretion and violated U.S. Const. Amends. 4, 5, 6, 8, and 14 by refusing to strike or remove juror Mary Hayes from jury, despite Hayes repeatedly asking to not be on jury because she can't be fair/impartial since she personally knows many prosecution witnesses including, but not limited to, Erie Police officer Jerome Odom and his cousin (adverse alleged co-defendant Stephon Johnson).

Supporting Facts: See, pages 1-3 (Brief Case History) of section #/2 of this petition; pages 63-64 of Ground #28 of this petition.

30. Trial counsel (James Moran) was ineffective and violated U.S. Const. Amends. 4, 5, 6, 8, and 14 for not striking or requesting removal of juror Mary Hayes who repeatedly requested removal from/not to be on jury because she couldn't be fair/impartial because she personally knows many prosecution witnesses/police officers directly involved in case.

Supporting Facts: See, Ground #29, p. 66, of this petition.

31. Trial Judge abused discretion and violated U.S. Const. Amends. 1, 5, 6, 8, and 14 by denying petitioner's Motion For Severence.

Supporting Facts: Petitioner was prejudiced by court refusing to sever petitioner's and defendant Howard's trial, despite fact they had conflicting defenses and Howard was a prosecution witness against petitioner, Pa. R. Crim. P. 1128; see, page 35 of Ground #2 of this petition and Ground #27.

(#/2, page 67)

32. Trial Judge (shad connelly) abused discretion and violated u.s. const. Amends. 1, 5, 6, 8, and 14 by refusing to issue jury instructions requested at time of jury charge.

Supporting Facts: Petitioner was prejudiced by trial judge shad connelly refusing petitioner's attorney (James Moran) request for jury instruction 3.12 of Pennsylvania Suggested Standard of Criminal Jury Instructions regarding nature and use of confessions and/or admissions of alleged co-defendant, Antonio Howard, and use of them against defendant (petitioner) not making them. Especially, since the alleged prior bad acts defendant Howard testified to were unsubstantiated and never happened. Petitioner was also prejudiced by Court's denial of request to give jury instruction on charge of Theft of services. See, page 35 of Ground #2, Ground #27, and Ground #31 of this petition.

33. u.s. supreme court's Jones v. Mississippi, 141 s.ct. 1307 (2021), decision to reduce Miller v. Alabama, 132 s.ct. 2455 (2012), juvenile ~~xxxx~~ sentencing consideration requirement to only a discretionary sentencing procedure where youth is considered is abuse of discretion and violate u.s. constitution Amendments 1, 5, 6, 8, and 14.

Supporting Facts: The essential holding in Miller v. Alabama, 567 u.s. 460; 132 s.ct. 2455 (2012), is that "a life time in prison is a disproportionate

(#12, page 68)

sentence for all but the rarest children, those whose crime reflect "irreparable corruption"". Miller, 567 u.s. 479-80. A sentencer must actually "make the judgment" that the juvenile in question is one of the rare children for whom Life without Parole is a constitutionally permissible sentence. Miller, 567 u.s. at 480. The u.s. Supreme Court has expressly rejected the notion that sentencing discretion, alone, suffices: "Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects unfortunate yet transient immaturity." Miller, 577 u.s. 208.

AO 241 (Rev. 09/17)

(c)     **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?     ☑ Yes     ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(d) **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☑ Yes     ☐ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____ PCRA _____

Name and location of the court where the motion or petition was filed:

_Erie county court of common Pleas_

Docket or case number (if you know): _____

Date of the court's decision: _____ Pending _____

Result (attach a copy of the court's opinion or order, if available): _ Pending _

_____

_____

(3) Did you receive a hearing on your motion or petition?     ☐ Yes     ☐ No

(4) Did you appeal from the denial of your motion or petition?     ☐ Yes     ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?     ☐ Yes     ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground One: _____

_____

_____

**GROUND TWO:** _____ *See, attached.* _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

*See, attached.*

_____

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Two, explain why: _____

_____

_____

(c)    **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes·    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

AO 241 (Rev. 09/17)

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes    ☐ No

(4) Did you appeal from the denial of your motion or petition?    ☐ Yes    ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Two : _____

_____

_____

_____

**GROUND THREE:** _____ *See, attached.* _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_____ *See, attached.* _____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

(b) If you did not exhaust your state remedies on Ground Three, explain why: _____

_____

_____

_____

(c)    **Direct Appeal of Ground Three:**

   (1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

   (2) If you did not raise this issue in your direct appeal, explain why: _____

   _____

   _____

(d)    **Post-Conviction Proceedings:**

   (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

      ☐ Yes    ☑ No

   (2) If your answer to Question (d)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   (3) Did you receive a hearing on your motion or petition?                    ☐ Yes    ☐ No

   (4) Did you appeal from the denial of your motion or petition?               ☐ Yes    ☐ No

   (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?    ☐ Yes    ☐ No

   (6) If your answer to Question (d)(4) is "Yes," state:

   Name and location of the court where the appeal was filed: _____

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available): _____

   _____

   _____

   _____

AO 241 (Rev. 09/17)

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have used to exhaust your state remedies on Ground Three: _____

_____

**GROUND FOUR:**    _See attached_

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_See attached_

_____

_____

_____

_____

_____

(b) If you did not exhaust your state remedies on Ground Four, explain why: _____

_____

_____

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition: _____

AO 241 (Rev. 09/17)

Name and location of the court where the motion or petition was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(3) Did you receive a hearing on your motion or petition?    ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?   ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available): _____

_____

_____

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

_____

_____

_____

_____

_____

_____

(e)   **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four: _____

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes    ☑ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:    _See, attached page (i)_

_Some issues are still pending decision/exhaustion_
_in state PCRA appeal process. Motion to stay these Federal_
_Habeas corpus proceedings is filed with this petition._

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

_NO_

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.    _See, attached for 1st Habeas_

_Corpus (Noble v. Meyers). 2nd Habeas Corpus: Ricardo Noble v._
_John Wetzel, et. al., 1:13-CV-00366, Filed 12/23/2013 in U.S._
_District court for Western District of PA. Issue raised: Petitioner's_
_mandatory sentence of Life without Parole violates 8th_
_Amendment's prohibition on cruel and unusual punishment;_
_Petitioner's sentence should be vacated, and He should be_
_Resentenced in compliance with 8th Amendment: Result:_
_Withdrew, dismissed on 07/02/2019 because Petitioner's PCRA in State_
_court on said issue was Granted and petitioner Resentenced on 01/29/2018._

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.    _PCRA Filed in court of Common Pleas_

_of Erie County Pennsylvania._
_Issues Raised: see Section #12, Grounds I, II, 13-33, pages_
_1-5, 56-68 of this petition's Section #12._

( Section # 14 continues )

First Habeas corpus filed in Federal court:

Ricardo Noble V. Robert Meyers, (Warden),
No. 98-cv-00276, filed on 09/24/1998 in
U.S. District court for Western District of
Pennsylvania. Final Disposition in U.S. court
of appeals for Third circuit on 08/28/2001,
No. 00-3148, denied. Issues raised:

Appellant cannot address issues complained of
through appointed PCRA counsel who represented
petitioner's co-defendant in related matters on direct
appeal. This conflict denied petitioner effective
assistance of counsel and/or any counsel (6th
Amendment violation) and access to courts (1st
Amendment violation) which denies petitioner's
right to raise issues of ineffective assistance
of trial counsel (6th Amendment violation) who
failed to Supoena [sic] petitioner's accuser
before the Factfinders (Confrontation violation
of 6th Amend.); failure to properly litigate
material errors concerning the trial's voir dire
process in which many jurors expressed fixed
opinions of biasness but were still seated in
petitioner's jury; counsel's failure to properly
litigate issues on unfair decertification hearing
and protective order before the appellant [sic] courts
of PA; failure of trial counsel to litigate properly
the issues on demurrer which was unfairly denied
despite petitioner's overwhelming qualifications
which would permit demurrer to be granted; and
counsel's failure to properly litigate admissions
of prior alleged [sic] prior bad acts (which never
occurred) and allegations of such acts made by
co-defendants were permitted to be admitted
despite evidence to contrary of allege [sic] incidents.

( page 13(a) )

AO 241 (Rev. 09/17)

16.  Give the name and address, if you know, of each attorney who represented you in the following stages of the
judgment you are challenging: *(Each attorney was appointed by the court and only worked with prosecution against Petitioner.)*

(a) At preliminary hearing:    James Moran

(b) At arraignment and plea:    James Moran

(c) At trial:    James Moran

(d) At sentencing: in 1992, James Moran
Resentencing in 2018, Robert Barbato

(e) On appeal:    James Moran

(f) In any post-conviction proceeding: In 1997, Public Defender Joseph Burt
In 2012, Tina Fryling and Emily Stutz. In 2016
Robert M. Barbato, Jr.

(g) On appeal from any ruling against you in a post-conviction proceeding: In 2013, Public
Defenders Tina Fryling and Emily stutz.

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are
challenging?        ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

_____

(b) Give the date the other sentence was imposed:    _____

(c) Give the length of the other sentence:    _____

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the
future?        ☐ Yes    ☐ No

18.  TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain
why the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

_____

_____

_____

_____

_____

AO 241 (Rev. 09/17)

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2244(d) provides in part that:

(1)  A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241 (Rev. 09/17)

(2)    The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:  *Release From Custody and discharge, all charges dismissed, New trial, reduced sentence*

or any other relief to which petitioner may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on *08/04/2023* (month, date, year).

*I declare under penalty of perjury 28 u.s.c. 1746, the Foregoing is true and correct.*

Executed (signed) on *08/10/2023* (date).

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

_____

_____

_____

_____

MOTION UNDER 28 U.S.C. § 2244 FOR ORDER AUTHORIZING DISTRICT COURT TO CONSIDER
SECOND OR SUCCESSIVE APPLICATION FOR RELIEF UNDER 28 U.S.C. § 2254 OR § 2255

| United States Court of Appeals for the Third Circuit | | |
|---|---|---|
| **Name of Movant** <br> Ricardo Noble | **Prisoner Number** <br> BX 9351 | **Case Number** <br> (leave blank) |
| **Place of Confinement** P.o. Box 1000 <br> S.C.I- Houtzdale, Houtzdale, PA 16698 | | |
| IN RE: Ricardo Noble          ,MOVANT | | |

1. **Name and location of court which entered the judgment of conviction from which relief is sought:** _____

_Erie County Court of Common Pleas_

2. **Parties' Names:** _Commonwealth of Pennsylvania_ vs. _Ricardo Noble_

3. **Docket Number:** _318 A & B - 1992_    4. **Date Filed:** _06/05/1992_    5. **Date of**

**judgment of conviction:** _Sentenced on 09/28/1992_ 6. **Length of sentence:** _Life No Parole_ 7. **Nature of offense(s)**

**involved (all counts):** _Second Degree Murder,_

_Robbery,_

_conspiracy to Robbery._

_____

8. **What was your plea? (Check one)**        ☒ Not Guilty        ☐ Guilty        ☐ Nolo Contendere

9. **If you pleaded not guilty, what kind of trial did you have? (Check one)**    ☒ Jury        ☐ Judge only

10. **Did you testify at your trial? (Check one)**        ☐ Yes        ☒ No

11. **Did you appeal from the judgment of conviction? (Check one)**    ☒ Yes        ☐ No

12. **If you did appeal, what was the**

**Name of court appealed to:** _Superior court of PA_

**Parties' names on appeal:** _Commonwealth_ vs. _Ricardo Noble_

**Docket number of appeal:** _1770 PGH 1992_ **Date of decision:** _02/03/1994_

**Result of appeal:** _denied_

_PA Supreme court_
_Commonwealth v. Ricardo Noble_
_Docket No. 248 W.D. Alloc. DKt. 1994_
_Denied on 08/14/1994._

In 1992, at age 16, petitioner was sentenced to <u>mandatory</u> Life without parole(LWOP) for charges of Second Degree Murder, Robbery, and conspiracy to Robbery originating in 1991(at age 15). In 2012, u.s. supreme Court ruled that petitioner's LWOP sentence was unconstitutional, in <u>Miller v. Alabama</u>, 132 S.ct.2455 (2012), and <u>Miller v. Alabama</u> is retroactive in 2016, in <u>Montgomery v. Louisiana</u>, 136 s.ct.718 (2016). So, petitioner was <u>Resentenced</u> on 01/29/2018, LWOP removed and given 40 years to Life as <u>new sentence</u> (Com. v. Ricardo <u>Noble</u>, 318-1992). Petitioner appealed to Pennsylvania (PA) superior court (420 WDA 2018). Remanded, in part, to Erie county Court of County Pleas of PA on 04/15/2019. Denied in Erie-county on 01/27/2020. Appealed to PA superior court (204 WDA 2020). Denied on 07/21/2020. Appealed to PA supreme court (Docket No. 259 WAL 2020). Denied. Appealed to u.s. supreme court (Ricardo Noble v. Pennsylvania, 22-5354). Denied on 10/17/2022.

(page 2(a))

13. Other than a direct appeal from the judgment of conviction and sentence, have you filed any other petitions, applications for relief, or other motions regarding this judgment in any federal court? ☑ Yes    ☐ No

14. If you answered "yes" to question 13, answer the following questions:

A. FIRST PETITION, APPLICATION, OR MOTION

(1) In what court did you file the petition, application, or motion? U.S. District Court for Western District of PA.

(2) What were the parties' names? Ricardo Noble vs. Robert Meyers

(3) What was the docket number of the case? WD PA Civ. No. 1:98-CV-00276

(4) What relief did you seek? dismissal of all charges, release from prison.

(5) What grounds for relief did you state in your petition, application, or motion? see attached page 3(a)

(6) Did the court hold an evidentiary hearing on your petition, application or motion?    ☐ Yes    ☑ No

(7) What was the result?    ☐ Relief granted    ☑ Relief denied on the merits

☐ Relief denied for failure to exhaust    ☐ Relief denied for procedural default

(8) Date of court's decision: 01/28/2000

B. SECOND PETITION, APPLICATION, OR MOTION

(1) In what court did you file the petition, application, or motion? U.S. District court for Western District of PA    (2) What were the parties' names? Ricardo Noble vs. John Wetzel, et.al.    (3) What was the docket number of the case? 1:13-CV-00366    (4) What relief did you seek? Resentence, release from prison. (5) Grounds raised: Mandatory life without parole for Juvenile petitioner violates 8th Amendment, is cruel/unusual punishment. Result: withdrew on 07/02/2018 because Petitioner's PCRA in State court on said issue was Granted and Petitioner Resentenced on 01/29/2018, Life sentence changed to 40years to Life.

3